**EX PARTE Marquell SMITH**

**No. 06–15–00218–CR**

Court of Appeals of Texas,
Texarkana.

Date Submitted: January 25, 2016

Date Decided: February 10, 2016

Rick C. Shumaker, Bowie County Public Defender Office, Texarkana, TX, for appellant

Kate Curry Carter, Michael W. Shepherd, Assistant District Attorneys, Texarkana, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

Marquell Smith was arrested for murder on July 30, 2015, and his bail was set at $1 million.[1] Over ninety days passed without Smith being formally charged with an offense. On November 6, 2015, with the assistance of his court-appointed counsel, Smith filed an application for the writ of habeas corpus alleging that, under Article 17.151 of the Code of Criminal Procedure, he was entitled to be released on a personal bond or, in the alternative, was entitled to a reasonable bond. On November 18, the State filed an indictment against Smith. After a December 7 hearing, wherein Smith established he could not make bail and the State failed to establish it was ready for trial, the trial court denied Smith's application. Instead, the trial court, noting (1) the seriousness of the offense charged, (2) the fact that Smith voluntarily left the state, (3) the fact that the investigation covered several states, and (4) the fact that the State acted in good faith in presenting the case to the grand jury as timely as possible, held that application of the Article 17.151 time requirements to this case would be unreasonable and denied Smith's application. Smith appeals, arguing that the trial court erred in denying his Article 17.151 application.

In a unanimous opinion published less than three years ago in *Ex parte Gill*, 413 S.W.3d 425, 427–28 (Tex.Crim.App.2013), the Court of Criminal Appeals held that, under the plain language of Article 17.151, a trial court must release a defendant from custody on personal bond or by reducing the amount of bail where he has been continuously incarcerated for more than ninety days and the State is not ready for trial. The court also held that two of the factors used in setting the amount of bail found in Article 17.15—"[t]he nature of the offense and the circumstances under which it was committed" and "[t]he future safety of a victim of the alleged offense and the community"—do not apply to an Article 17.151 application for release.[2] *Gill*, 413 S.W.3d at 428, 432. Under the controlling authority of *Gill*, therefore, the trial court erred in denying Smith's application for writ of habeas corpus under Article 17.151.

On appeal, the State does not question the rule announced in *Gill*, but instead proposes two arguments it believes take this case outside of that rule.[3] First, the State's good faith and the inherent unreasonableness of applying Article 17.151 to this case justified denial of Smith's application. Nor can it, because there is no good faith or reasonableness exception to Article 17.151. Instead, the State presents two new arguments. Yet, even though the State did not raise these arguments to the trial court, it did not waive them because the State seeks to affirm the trial court's ruling, rather than reverse it. *See Alford v. State*, 400 S.W.3d

---

1. Although the appellate record contains no evidence of Smith's bail, both Smith and the Bowie County District Clerk's Office have confirmed the amount of his bail.

2. The Court of Criminal Appeals also held that the trial court cannot consider a defendant's criminal history under Article 17.151. *Gill*, 413 S.W.3d at 432.

3. The State does not attempt to argue that the trial court was correct in holding that the

State asserts that Smith failed to prove that his $1 million bond was excessive. Second, the State argues that, even if the trial court could not consider the prohibited Article 17.15 factors under Article 17.151 and *Gill*, it could consider them under Article 17.09 and the case of *Hernandez v. State*, 465 S.W.3d 324, 326 (Tex. App.–Austin 2015, pet. ref'd).

We find that, under the applicable law, Smith established that the $1 million bond in this case is excessive. We also find that the State's reliance on Article 17.09 is premature on the record before us, and we decline to consider whether and to what extent Article 17.09 might modify Article 17.151 or affect the applicability of *Gill*.

924, 929 (Tex.Crim.App.2013) (holding that "prevailing party at trial [may] rely on any applicable legal theory to uphold the trial court's ruling on appeal" even if it failed to present argument to trial court).

4. We have jurisdiction over this appeal from the denial of an application for habeas corpus relief even though we would not have jurisdiction to consider a pretrial motion for bail reduction. Although both procedural mechanisms seek the same result, only an order denying an application for habeas corpus relief is appealable. *Ragston v. State*, 424 S.W.3d 49, 50, 52 (Tex.Crim.App.2014). In *Greenwell v. Court of Appeals for the Thirteenth Judicial District*, the Court of Criminal Appeals explained that "[t]he right of appeal occurs [in the habeas proceeding but not the pretrial motion for bail reduction] because the habeas proceeding is in fact considered a separate 'criminal action,' and the denial of relief marks the end of the trial stage of that criminal action and the commencement of the timetable for appeal." *Greenwell v. Court of Appeals for Thirteenth Judicial Dist.*, 159 S.W.3d 645, 649–50 (Tex.Crim.App.2005) (footnote omitted) (citation omitted). Consequently, "[h]abeas corpus proceedings are separate and distinct proceedings independent of the cause instituted by the presentation of an indictment or other forms of the State's pleadings[, and s]uch habeas proceedings should be docketed separately from the substantive cause and given a different cause

Accordingly, we reverse the trial court's order denying Smith's application and remand the matter for further proceedings in accordance with Article 17.151 and the guidance provided by this opinion.[4] The reasons for our ruling follow.

## I. Standard of Review

■ A "decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail 'will not be disturbed by this Court in the absence of an abuse of discretion.'" *Gill*, 413 S.W.3d at 428 (quoting *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex.Crim.App.1981)). A trial court abuses its discretion when it applies "an erroneous legal standard, or when no reasonable view of the record

number." *Ex parte Carter*, 849 S.W.2d 410, 412 n. 2 (Tex.App.–San Antonio 1993, pet. ref'd).

In this case, Appellee did not file his habeas corpus application as a separate proceeding; however, that fact does not negate our appellate jurisdiction. *See Ex parte Bui*, 983 S.W.2d 73, 75 (Tex.App.–Houston [1st Dist.] 1998, pet. ref'd) ("The manner in which they were docketed does not affect jurisdiction. No authority was found or cited to this Court for dismissing an appeal because a habeas corpus proceeding was docketed with the underlying action."); *see also Ex parte Young*, 257 S.W.3d 276, 278 (Tex.App.–Beaumont 2008, no pet.) (Gaultney, J., concurring in part, dissenting in part) ("The failure to docket a habeas corpus proceeding separately does not affect this Court's jurisdiction, nor does that clerical error make the habeas corpus proceeding something other than a 'separate and distinct proceeding[ ] independent of the cause instituted by the State.'") (alteration in original) (quoting *Ex parte Bui*, 983 S.W.2d 73, 73 n. 1, 75 (Tex.App.–Houston [1st Dist.] 1998, pet. ref'd)). Essentially, a pretrial application for writ of habeas corpus is still considered a separate action, even when it is filed under the same cause number as the underlying criminal action, and the trial court's order denying that application is still a final and appealable judgment because it resolves all the issues presented in the habeas proceeding.

could support the trial court's conclusion under the correct law and facts viewed in the light most favorable to its legal conclusion." *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85, 90 (Tex.Crim.App.1997).

## II. The Mandate of Article 17.151 and *Gill*

Article 17.151 of the Code of Criminal Procedure reads:

A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within: .... 90 days from the commencement of his detention if he is accused of a felony.

TEX.CODE CRIM. PROC. ANN. art. 17.151, § 1 (West 2015). This Article preserves the presumption of innocence by ensuring that "an accused as yet untried and unreleased on bond will not suffer 'the incidental punitive effect' of incarceration during any further delay attendant to prosecutorial exigency." *Ex parte Jones*, 803 S.W.2d 712, 716 (Tex.Crim.App.1991) (quoting *Ex parte Green*, 688 S.W.2d 555, 557 (Tex.Crim.App.1985)).

"Under Article 17.151, the State has the initial burden to make a prima facie showing that it was ready for trial within the applicable time period." *Ex parte Ragston*, 422 S.W.3d 904, 906–07 (Tex.App.–Houston [14th Dist.] 2014, no pet.) (citing *Jones*, 803 S.W.2d at 717); *see Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex.App.–Fort Worth 1993, no pet.). "The question of the State's 'readiness' within the statutory limits refers to the preparedness of the prosecution for trial." *Brosky*, 863 S.W.2d at 778 (citing *Behrend v. State*, 729 S.W.2d 717, 720 (Tex.Crim.

App.1987)). The State may show readiness "either by announcing within the allotted time that it is ready, or by announcing retrospectively that it had been ready within the allotted time." *Ragston*, 422 S.W.3d at 907.

Article 17.15 establishes the rules for setting the amount of bail. It states,

The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15 (West 2015). In *Gill*, the Court of Criminal Appeals considered the interplay between Articles 17.15 and 17.151.

In *Gill*, the Court of Criminal Appeals held that the third and fifth factors in Article 17.15—"[t]he nature of the offense and the circumstances under which it was committed" and "[t]he future safety of a victim of the alleged offense and the community"—are not applicable to a hearing under Article 17.151. *Gill*, 413 S.W.3d at 428–30. The court reasoned that "[t]he first sentence of article 17.151 unequivocally declares that a defendant detained

pending trial 'must be released' if the State is not ready for trial within the appropriate amount of time." *Id.* at 430 (quoting TEX.CODE CRIM. PROC. ANN. art. 17.151, § 1). Therefore, "[c]onditioning release under article 17.151 on matters such as victim- or community-safety concerns deprives the statute of any meaning apart from article 17.15 and potentially frustrates article 17.151's clear intent." *Id.* The Court of Criminal Appeals concluded,

> We are troubled that a judge may order the indefinite detention of an uncharged accused on an offense the State is not ready to bring to trial on the basis of his criminal history, the nature of the alleged offense, or that he might present a danger to the victim or the community. It apparently troubled the Legislature as well. Article 17.151 was the remedy.

*Id.* at 432.

## III. Analysis

### A. Introduction

At the hearing on Smith's application, the State stipulated that Smith was indicted more than ninety days after he was incarcerated. "The State cannot announce ready for trial when there is no indictment." *Ex parte Castellano*, 321 S.W.3d 760, 763 (Tex.App.–Fort Worth 2010, no pet.). Further, even though as of the time of the Article 17.151 hearing the indictment had issued, the State did not indicate in any way that it was prepared for trial. In fact, Matt Cashatt, a detective with the Texarkana, Texas, Police Department, testified (1) that he had not turned over the complete case file to the district attorney's office, (2) that the case investigation was

still ongoing, (3) that he was still working to locate a person who was either a witness or a possible suspect, and (4) that he had recently developed new information on the case. *See Jones*, 803 S.W.2d at 718 (involving facts supporting State's retroactive announcement that it had been ready for trial in timely manner). Accordingly, the record establishes the two elements of Article 17.151: (1) that Smith had been continuously incarcerated for more than ninety days and (2) that the State was not ready for trial.[5]

### B. The State's First Argument in Support of the Trial Court's Order

■ In its first argument, the State asserts that a third element of Article 17.151 is absent; namely, that Smith failed to prove his $1 million bond was excessive. The State first points to the following language from *Gill* to argue that, even after the State has stipulated that it is not ready for trial,

> [t]he judge in an article 17.151 hearing still must decide from the evidence whether the State is ready for trial, determine the length a defendant has been in custody, as well as consider the article 17.15 rules in determining whether to issue a personal bond or to set an amount of bail to effectuate the accused's release.

*Id.* at 432. The State then cites to one of our previous cases where we held that "[i]f . . . the record does not also show [that] the current bail setting is excessive, then the accused is *not* entitled to relief—even if the evidence otherwise shows the accused has been in custody in excess of the time frame provided by Article 17.151." *Smith v. State*, 161 S.W.3d 191, 193 (Tex.

---

5. The trial court did not find that the State was ready for trial. Moreover, the State does not make that assertion in this Court, either. Considering the fact that the trial court relied on the State's good faith and the unreason-

ableness of applying Article 17.151 to this case rather than on the fact that the State was, in fact, ready to try the case, the evidence cited herein establishes that the State was not ready for trial.

App.–Texarkana 2005, no pet.) (citing *Carraway v. State*, 750 S.W.2d 12, 13 (Tex. App.–Houston [14th Dist.] 1988, no pet.)).

In *Smith*, the defendant was charged with three felony offenses and sought release under Article 17.151. *Id.* at 192. We first held that the defendant was not entitled to relief under Article 17.151 because the record established he had been sentenced to 170 days on another misdemeanor charge while the current felony charges were pending, and there was no evidence establishing that he was not still serving his misdemeanor sentence during the statutory ninety-day period under Article 17.151. *Id.* at 193. We concluded that, in the absence of proof that he had completed serving his misdemeanor sentence, he was ineligible for release under Section 2 of Article 17.151. *Id.* at 194.[6] We then held that Smith had failed to prove his indigence because "the record before us lack[ed] evidence about Smith's [then] current financial situation," and "[w]ithout any evidence of Smith's available pecuniary resources, work history, family ties, length of residency in the community, criminal history, conformity with previous bond conditions, and/or the nature and circumstances of the offense committed, this Court [could not] even begin to determine what an appropriate bail setting might be." *Id.* (citations omitted).

Of course, *Smith* was decided prior to *Gill*. Accordingly, we no longer consider "[t]he nature of the offense and the circumstances under which it was committed" or the defendant's criminal history under Article 17.151. *Gill*, 413 S.W.3d at 432. Moreover, in regard to the other factors, in this case, Smith testified about his employment status, the availability of assets which could be sold to make his bond, his cash available to make a bond, and his family's financial ability to make a bond, and the State did not contest Smith's indigency. Accordingly, the record here establishes the information we found lacking in *Smith*.[7]

## C. The State's Second Argument in Support of the Trial Court's Order is Not Supported by the Record

### 1. Introduction

In its second argument, the State argues that, while the trial court could not consider the prohibited Article 17.15 factors under Article 17.151 and *Gill*, it could consider those factors under Article 17.09 and *Hernandez*. The State concludes that, when those prohibited factors are considered, the trial court properly denied Smith's application.

6. Article 17.151, Section 2, states, "The provisions of this article do not apply to a defendant who is: (1) serving a sentence of imprisonment for another offense while the defendant is serving that sentence...." Tex. Code Crim. Proc. Ann. art. 17.151, § 2(1) (West 2015).

7. We also note that, in *Smith*, we relied on *Carraway v. State*, which questioned the constitutionality of Article 17.151. *See Carraway v. State*, 750 S.W.2d 12, 13 (Tex.App.–Houston [14th Dist.] 1988, no pet.) ("[W]e note in passing that the constitutionality of Article 17.151 is seriously called into question by *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim. App.1987), where the court of criminal appeals declared the Texas Speedy Trial Act unconstitutional."). In *Meshell*, the Court of Criminal Appeals held that the Texas Speedy Trial Act was unconstitutional because it violated the separation of powers doctrine. *Id.* But in *Gill*, the Court of Criminal Appeals specifically found that Article 17.151 is constitutional. *Gill*, 413 S.W.3d at 432 ("We hold that article 17.151 does not unduly interfere with the Judiciary's effective exercise of its constitutionally assigned power and therefore does not violate the separation of powers provision of the Texas Constitution."). Therefore, it is questionable whether *Carraway* is still viable in light of *Gill*.

In *Hernandez*, the defendant was arrested for aggravated robbery, and his bond was set at $75,000.00. *Hernandez*, 465 S.W.3d at 325. Eighty-four days later, "the trial court released Hernandez, who had not yet been indicted, on a $25,000 personal recognizance bond." *Id.* Subsequently, the State indicted Hernandez and "filed a 'Motion to Increase Bond.'" *Id.* at 326. During the hearing on that motion, Hernandez sought relief under Article 17.151, and the trial court denied the relief, ordering Hernandez to post a $75,000.00 surety bond. *Id.* In support of its ruling, the trial court issued findings of fact discussing several factors, including the Article 17.15 factors. The Austin Court of Appeals summarized the trial court's actions as follows:

> [I]t increased Hernandez's bond and denied his request for habeas relief after "taking into account the fact the case had been indicted, the allegations in the probable cause affidavit, the DNA evidence, the threat to the victim of the crime, the threat to the community, the aggravating factors of the offense, and the likelihood of the defendant appearing for trial."

*Id.* at 327.

On appeal, the Austin Court of Appeals acknowledged the holding in *Gill*, but then held that "the [trial] court had the authority to revisit the issue of bond [under Article 17.09] and did not abuse its discretion in reinstating the original $75,000 bond." *Id.* at 326. The Austin Court of Appeals further held that Article 17.09 "grants a trial court the ongoing authority to manage a defendant's bond and terms of release" and that under that statute, the trial court may impose higher bond for many reasons "such as a reevaluation of the circumstances and the adequacy of a defendant's bond." *Id.* The court of appeals reasoned:

> [H]olding that a trial court could never revisit the issue after a defendant is released under article 17.151 could lead to an absurd result such as a trial court, despite being presented with overwhelming evidence that a defendant is guilty of a grievous felony and both poses a serious flight risk and risk to the victim or the community, being unable to order the defendant back into custody or order a bond increased to a sufficient level.

*Id.* at 327. The court of appeals concluded that, "although a defendant is entitled to release under article 17.151 if the State is not prepared for trial by a certain date, the trial court maintains the discretion to revisit the issue of bond and release at a later date, given sufficient cause to do so." *Id.* The State argues that, based on this language from *Hernandez* and notwithstanding the dictates of *Gill*, a trial court can consider the Article 17.15 factors in response to an application for release from custody under Article 17.151 if it does so through the procedures set forth in Article 17.09.

## 2. The State's Reliance on Article 17.09 is Not Supported by the Record

We agree with the ruling in *Hernandez* that, under Article 17.09, a "trial court maintains the discretion to revisit the issue of bond and release at a later date, given sufficient cause to do so." *Id.* at 327. Yet, in *Hernandez*, the State did not assert Article 17.09 in direct response to Hernandez' Article 17.151 application as the State does here. Rather, Hernandez filed his Article 17.151 application, and it was granted. *Later*, after Hernandez had been released, he was indicted for aggravated robbery, and the State moved to reconsider the amount of the bond under Article 17.09. Based on facts occurring after the original bond had been set and after the

Article 17.151 motion had been granted, the trial court granted the State's motion to reconsider bond under Article 17.09. Therefore, *Hernandez* does not hold that the State may assert the Article 17.15 factors in direct response to an Article 17.151 application by merely using Article 17.09 as a conduit.

■ The State's argument, however, is not based solely on *Hernandez*, but on Article 17.09 itself. Thus, simply distinguishing *Hernandez* does not end the discussion. This argument, in fact, raises a complicated issue regarding the interplay between Articles 17.15, 17.151, and 17.09.[8] Nevertheless, resolution of this question is premature on the record before us. Even if we were to assume without deciding that the State could assert the prohibited Article 17.15 factors in direct response to an Article 17.151 application using Article 17.09 as a conduit, the State failed to establish the evidence necessary to invoke Article 17.09.[9] While "the prevailing party at trial [may] rely on any applicable legal theory to uphold the trial court's ruling on appeal" even if it failed to present that argument to the trial court, *see Alford*, 400 S.W.3d at 929, the argument must be based on evidence present in the record. No evidence was presented to the trial court which would establish the change in circumstances necessary for the State to

8. On the one hand, to hold that the State can rely on the prohibited Article 17.15 factors under Article 17.09, but can never invoke Article 17.09 in direct response to an Article 17.151 motion, would lead to an absurd result. In that scenario, a trial court would be required to release a defendant on a personal recognizance bond under Article 17.151 without considering the Article 17.15 factors. Yet, immediately thereafter, the State could ask for reconsideration of the bond under Article 17.09. In that subsequent hearing, the trial court could consider the prohibited Article 17.15 factors. This would render Article 17.151 and *Gill* little more than an academic exercise. On the other hand, if we adopted the State's argument here, the State could respond to any defendant's application for release under Article 17.151 by merely invoking Article 17.09 and thereby bring the prohibited Article 17.15 factors into issue. This would directly contradict the clear holding in *Gill* and nullify Article 17.151.

9. Article 17.09 establishes the circumstances under which an original bond may be modified or revoked. In particular, Article 17.09 provides that "[w]hen a defendant has once given bail for his appearance to answer to a criminal charge, he shall not be required to give another bond in the course of the same criminal action except as herein provided." Tex.Code Crim. Proc. Ann. art. 17.09, § 2 (West 2015). Article 17.09 also states that the "judge ... may ... order the accused to ... give another bond" if the judge "finds that the bond is defective, excessive or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause...." Tex.Code Crim. Proc. Ann. art. 17.09, § 3 (West 2015). Therefore, unless the "defendant has once given bail" or something has changed after the original bond was set which renders the original bond "defective, excessive, or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause," Article 17.09 does not apply and the trial judge cannot require the defendant "to give another bond in the course of the same criminal action...." Tex.Code Crim. Proc. Ann. art. 17.09, §§ 2–3.

In *Hernandez*, the defendant made bail and was released. After he was indicted, the State moved to increase his bond under Article 17.09. The State supported its motion with evidence of changed circumstances. *Hernandez*, 465 S.W.3d at 325–26. In particular, the State obtained DNA linking the defendant to a shirt found at the crime scene. *Id.* at 327. Based on these changed circumstances, the State filed a motion to increase bond under Article 17.09, and the trial court granted the motion. *Id.* In this case, however, the State wholly failed to present any evidence that Smith "has once given bail for his appearance" or that any change in circumstances has occurred since the original bond was set. Therefore, the State failed to establish the foundation necessary to invoke Article 17.09.

obtain relief under Article 17.09. Accordingly, we need not decide whether and to what extent Article 17.09 modifies Article 17.151 or affects the applicability of *Gill.* We overrule the State's second argument.

## IV. Conclusion

Because it is undisputed that the State was not ready for trial within ninety days from the commencement of Smith's detention, Smith was "entitled to have bond set at either a personal bond or at an amount he can make." *Ex parte Carson,* 215 S.W.3d 921, 923 (Tex.App.–Texarkana 2007, no pet.) (noting that Texas Attorney General interpreted statute to mean " 'the bail must be reduced to an amount defendant can pay and thereby secure his release.... A token reduction of one dollar will not comply with this section's requirement that defendant "be released ... by reducing the amount of bail required." ' ") (quoting Tex. Att'y Gen. Op. No. H–1130 (1978)).[10]

We reverse the trial court's order denying Smith's Article 17.151 habeas application and remand this cause to the trial court for further proceedings consistent with this opinion. The mandate in this case shall issue immediately. *See id.* at 924 (citing Tex.R.App. P. 2) (recognizing authority of appellate court to suspend rules, including time frame for issuance of mandate, to expedite decision).

10. Smith's application stated that he could raise funds required to pose a $5,000.00 personal bond.