# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-20-00430-CR**

---

**Ex parte Roger Pace**

---

**FROM THE 33RD DISTRICT COURT OF BURNET COUNTY**
**NO. 50465, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Roger Pace is jailed pending trial on ten counts of the second-degree felony offense of prohibited sexual conduct, committed against his biological daughter and resulting in the birth of two children. *See* Tex. Penal Code § 25.02(a)(1), (c). Pace appeals the district court's order denying his pretrial application for writ of habeas corpus seeking a bail reduction. *See* Tex. Code Crim. Proc. arts. 11.08, .24. He contends that: (1) the amount of his bail is excessive and is being used as an instrument of oppression and (2) he is entitled to release on bond under article 17.151 of the Texas Code of Criminal Procedure because of the district court's inability to conduct jury trials under the terms of the COVID-19 disaster declaration and emergency orders. *See id.* art. 17.151, § 1(1) (requiring release of defendant accused of felony offense and detained pending trial, either on personal bond or by bail reduction if State is not ready for trial within 90 days after defendant's detention began). We will affirm the district court's order denying habeas relief.

## BACKGROUND

Pace was arrested, charged with prohibited sexual conduct, and jailed October 29, 2019. *See* Tex. Penal Code § 25.02(a)(1), (c). He was found indigent December 26, 2019, and had counsel appointed to represent him. A grand jury issued a ten-count felony indictment against him January 7, 2020, and he remains jailed. Originally, a magistrate set Pace's bond at $100,000 but it was increased to $200,000—$20,000 for each count in the indictment—when he was indicted.

Pace filed a motion to reduce bond March 30, 2020, which the court heard June 15, 2020, via Zoom. Pace testified at the hearing, and defense counsel made a proffer of testimony from Pace's son. Pace testified that he had $400 but no property that he could sell and that he could borrow money only from his son. Pace stated that he had not had "a day-to-day 8:00 to 5:00 job" for some time but that he had a GED and was a skilled handyman—with the ability to do painting, yardwork, and general repairs—and a musician. He also stated that he receives "supplemental income" and "social security disability" in two monthly checks totaling $803; that he uses that money to help support his wife, son, and "whomever else"; and that those checks were still available to his family while he was in jail. But he acknowledged that his son had been paying "the bills for [Pace's] home" for quite some time before Pace's arrest and that his wife received "food stamps." Pace testified that he had physical ailments including inflammatory arthritis, degenerative disk disease, irritable bowel syndrome, and chronic pain. He opined that his health problems made him more susceptible to coronavirus[1] but admitted receiving medication at the jail for those problems. On cross-examination, Pace testified that he has been diagnosed as bipolar and suffers from depression. Pace also testified that he was

---

[1] In his brief, Pace states that he "has suffered COVID-19 in the Burnet County Jail."

convicted of burglary of a habitation in 1978, driving with a suspended license in 1997, and driving while intoxicated in 2004 and that he has had "multiple arrests."

Pace testified that if his bond were reduced and he were released, he could live at a residence with his wife in Kingsland, Texas. He denied knowing whether that was the same home where his wife cared for the children involved in the case—the grandsons that the State alleged were also his sons by his daughter—but he stated that he would comply with an order to stay away from the children and his daughter. Pace stated that if his wife took care of the children, he would "probably be at work while they're there." If he were ordered not to go to the house while his wife cared for the children, Pace said he would "have to rent an apartment."

Defense counsel proffered to the court without objection that Pace's son would testify that he had known Pace all his life, that Pace had only $400, and that Pace was unable to sell anything or borrow any money to make bond. Pace's son would also testify that if granted bond, Pace would "show up in court"; that Pace posed no flight risk or danger to the community; and that Pace could stay with him "in any apartment that he has."

During closing argument, defense counsel noted that because of the coronavirus, it was unclear "when the court is going to start hearing jury trials again" and requested that the district court reduce the amount of the bond so that Pace could help support his family. The State proffered that Pace's offense involved allegations of long-term sexual abuse of his daughter, beginning when she was sixteen, and that there were two children from that sexual abuse. The State also proffered that Pace attempted to contact his daughter from jail in violation of a protective order, that he was charged with the offense of improper contact of a victim under

3

section 38.111 of the Texas Penal Code,[2] and that Pace's daughter was "very nervous" because Pace told her "something to the effect of that he was capable of murder if he had ever found her with another man." The State noted that Pace faced up to twenty years' imprisonment on each of the ten counts charged and because the offenses are stackable, "he's looking at a combined total of 200 years." Lastly, the State announced that it was "perfectly fine with this getting set number one out of the gate when trials resume."

At the conclusion of the bond-reduction hearing, the district court noted that "[t]he bonds are already set on the lower end of the spectrum for second degree felonies, so there's not much wiggle room generally speaking in my mind when it comes to that even with circumstances." After considering the cumulative amount, the district court reduced Pace's total bond to $175,000 by lowering the bond amounts on Counts 6 through 10 to $15,000 per count but leaving unchanged the $20,000 per count bond amounts on Counts 1 through 5. The district court stated that it wanted Pace's case "to be one of the first to be tried after the pandemic."

Pace filed a pretrial application for writ of habeas corpus July 29, 2020, contending that he could not make the $175,000 bond and that he was entitled to release under article 17.151 of the Code of Criminal Procedure because of the district court's inability to conduct jury trials under the terms of the COVID-19 disaster declaration and emergency orders and because the State "did not have DNA tests back" and "can't say that [it] is ready for trial." *See* Tex. Code Crim. Proc. art. 17.151, § 1(1) (requiring release of defendant accused of felony offense and detained pending trial, either on personal bond or by bail reduction, if State is not ready for trial within 90 days after defendant's detention began). The district court heard Pace's habeas application August 13, 2020, via Zoom and took judicial notice of the record from the

---

[2] Defense counsel was also appointed to represent Pace on this charge.

4

bond-reduction hearing. Pace testified that his financial situation was unchanged since the bond-reduction hearing and that he was unable to make the bonds in the amounts set. He acknowledged that he could not return to his residence if released and stated that he asked his son to "take what money that I've got" and rent an apartment for him. Defense counsel proffered that Pace's family planned to move to Stephenville, placing greater distance between them and Pace if he were released.

Additionally, defense counsel contended that Pace should be released under article 17.151 of the Code of Criminal Procedure because he had been in jail for more than 90 days and the State could not be ready for trial given the Governor's "edicts" concerning the COVID-19 pandemic precluding jury trials. *See id*. Defense counsel also contended that the State could not be ready for trial because it had not provided him with "DNA results of the children that they're trying to match up with [Pace]" and he "[didn't] see how they [could] try this case without them."

In response, the State said that it was "ready, willing, and able to try [Pace] on the very first date that we receive [a setting]" and pointed to its announcement during the bond-reduction hearing that it was "perfectly fine with this getting set number one out of the gate when trials resume." Further, the State noted that the DNA testing was "just paternity testing," not the type performed by the Department of Public Safety that can sometimes require a longer time for results, and that the State was "ready to go to trial without the DNA." Defense counsel replied:

> At this point in this proceeding, the State cannot go to trial, and how that comports with them being ready to go to trial is beyond me. My client cannot have a trial right now. And he can't have a trial right now because the [G]overnor—who's the State of Texas—has issued an order that says [Pace] can't have a trial. My client is just sitting in jail now, been there for ten months, and

5

17.151 gives him a remedy, Judge, where his bond can be reduced to a reasonable amount where he can make it or he can get a P.R. bond.

At the conclusion of the hearing, the district court stated that "when we are able to have jury trials, [Pace's case] will be on that first docket. Right now, until further order from the Supreme Court or the Governor of Texas, . . . October 19th is the first date that it could happen." The district court denied Pace's habeas application in open court and signed a written order denying relief the same day. This appeal followed.

## DISCUSSION

### I. Pace's $175,000 Bond is Not Excessive

In his first issue, Pace contends that his $175,000 bail is excessive. Setting bail is a decision committed to the trial court's sound discretion, but the exercise of that discretion is governed by the constitution and by statute. *See Ex parte Beard*, 92 S.W.3d 566, 567-68 (Tex. App.—Austin 2002, pet. ref'd). When setting bail, trial courts must balance the defendant's presumption of innocence with the State's interest in assuring the defendant's appearance at trial. *Id.* at 573. "Excessive" bail is prohibited by the federal and state constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail is excessive "if set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests." *Beard*, 92 S.W.3d at 573. Along with the constitutional prohibition against excessive bail, article 17.15 of the Code of Criminal Procedure sets forth the following statutory requirements:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

6

3.  The nature of the offense and the circumstances under which it was committed are to be considered.

4.  The ability to make bail is to be regarded, and proof may be taken upon this point.

5.  The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.  In applying article 17.15 to set the amount of bail, the trial court may also consider the defendant's work record, family and community ties, length of residency, prior criminal record, conformity with previous bond conditions, and aggravating circumstances alleged to have been involved in the charged offense.  *Aviles v. State*, 26 S.W.3d 696, 698 (Tex. App.—Houston [14th Dist.] 2000, order) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981)).

The defendant has the burden of proving that bail is excessive under these factors. *Rubac*, 611 S.W.2d at 849; *Beard*, 92 S.W.3d at 568.  We review a trial court's ruling on a request for bail reduction under an abuse-of-discretion standard.  *Rubac*, 611 S.W.2d at 850; *Beard*, 92 S.W.3d at 568; *see Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that trial judge's decision at habeas proceeding on imposition or reduction of bail will stand absent abuse of its discretion).  We will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Beard*, 92 S.W.3d at 573; *see Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981) (reducing amount of defendant's bail after court was "completely satisfied that petitioner discharged her burden of showing her entitlement" to relief); *Ex parte Welch*, 729 S.W.2d 306, 310 (Tex. App.—Dallas 1987, no pet.) (rejecting defendant's contention that bail was excessive after concluding that he failed to meet his burden of showing that trial court abused its discretion by refusing to lower amount of his bond).

7

### A. Nature and circumstances of offense, length of sentence, and safety concerns

As to the nature and circumstances of the offense and the possible length of Pace's sentence if convicted, we note that Pace is charged with ten counts of the second-degree felony offense of prohibited sexual conduct and faces up to twenty years' imprisonment on each count. *See* Tex. Penal Code §§ 12.33(a), 25.02(a)(1), (c); *Rubac*, 611 S.W.2d at 849 (stating that two primary factors to be considered in determining what constitutes reasonable bond amount are nature of offense and length of sentence). Further, the sentence on any of these counts could be ordered served consecutively with any other. *See* Tex. Penal Code § 3.03(b)(2)(A).[3] The indictment alleges that Pace intentionally or knowingly engaged in sexual intercourse with the victim, a person that Pace knew to be his daughter, on ten separate occasions. The State proffered that Pace had engaged in long-term sexual abuse of her, beginning when she was sixteen, and that there were two children from that sexual abuse. Thus, the record reflects that the allegations against Pace are serious, particularly because of the familial relationship between him and his alleged victim. *See Esquivel v. State*, 922 S.W.2d 601, 603 (Tex. App.—San Antonio 1996, no pet.) (noting that sexual offenses charged were "extremely repugnant" and "[c]onsidering that the accused is the natural father of the victim, a greater sense of helplessness and overreaching by a person in authority cannot be imagined").

As to the safety of the victim and community, Pace testified that he asked his son to rent an apartment for him, although one had not been rented yet, and that he would comply with a court order to stay away from his daughter and the children. The defense also proffered that Pace was not a flight risk or danger to the community, and that Pace's family was moving to

---

[3] Because Pace's prior felony conviction for burglary of a habitation makes him eligible for enhanced punishment, he potentially faces up to ten consecutive life sentences. *See* Tex. Penal Code §§ 12.32(a), .42(b).

8

Stephenville. However, the State proffered that Pace had attempted to contact his daughter from jail, in violation of a protective order, and that she was "very nervous" because Pace told her "something to the effect of that he was capable of murder if he had ever found her with another man." Pace's future living arrangements were uncertain, the alleged victim feared him, and Pace had already attempted to contact her while jailed. Based on the evidence presented to it, the district court could have reasonably inferred that a protective order and bond conditions might not ensure the victim's safety in this case. Moreover, the district court reduced the amounts of the bonds for Counts 6 through 10. Pace points to no authority suggesting that $175,000 is an excessive amount of bail for ten counts of the second-degree felony offense of prohibited sexual conduct. Bail for second-degree felonies set between $30,000 to $75,000 has been upheld on appeal. *See Ex parte Tata*, 358 S.W.3d 392, 399 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Here, as the district court stated, Pace's bail amounts of $15,000 and $20,000 per count are "already set on the lower end of the spectrum for second degree felonies." The district court could have determined, within the zone of reasonable disagreement, that the bail amounts for each count were reasonable given the nature of the charged offense, length of sentence, and safety concerns.

## B. Ability to make bail

Pace contends that a $175,000 bond "is basically a no bond for [him]" and that he "really can't make bond at all without PR bond." The Court of Criminal Appeals has instructed that an accused's ability to post bail is a factor to be considered, but an inability to make the bail set by the trial court does not automatically render the bail excessive. *See Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980); *Maldonado v. State*, 999 S.W.2d 91, 96 (Tex. App.—

9

Houston [14th Dist.] 1999, pet. ref'd). This applies even when the accused is determined to be indigent. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). Unless a defendant shows that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Tata*, 358 S.W.3d at 400.

Here, Pace testified that he had $400 but no property that he could sell. He said that he receives "supplemental income" and "social security disability" in two monthly checks totaling $803 and that he used that money to help support his wife and son. But Pace acknowledged that the bills for his home had been paid by his son for some time before Pace was arrested. Pace did not present the district court with any details about any expenses that prevented him from applying his income toward his bond. Pace testified that he could borrow money only from his son but offered no testimony about his son's financial resources and did not testify about any attempt that he or others made to furnish his bail through a surety. Because Pace did not show why he could not apply his income toward a bond, that his funds and those of his family had been exhausted, or that there had been any unsuccessful effort to obtain bail, the district court could have found, within the zone of reasonable disagreement, that Pace failed to meet his burden of showing that bail was excessive because of his inability to make bail and thus, that this factor did not favor further bail reduction. *See id.*

### C. Sufficient bail to assure appearance but not oppress

The primary purpose of an appearance bond is to secure the presence of the accused at trial on the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. 1980). Bail must be set in an amount high enough to give reasonable assurance that the

accused will appear as required. *Charlesworth*, 600 S.W.2d at 317. But the power to require bail should not be used as an instrument of oppression by setting an amount "for the express purpose of forcing [the defendant] to remain incarcerated" while his trial or appeal are pending. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

Nothing in this record shows that the district court declined to further reduce Pace's bail amount for the express purpose of forcing Pace to remain jailed pending trial. *Cf. id.* (concluding that district court abused its discretion where trial judge refused to lower bond amount stating, "I'd rather see him in jail than to see someone's life taken."). Pace cites only article 17.15 itself and *Ex parte Kerr*, 549 S.W.2d 6 (Tex. Crim. App. 1977), in support of his contention that bail may not be used as an instrument of oppression. In *Kerr*, the Court of Criminal Appeals noted that there was no evidence showing the circumstances surrounding the crime and held that the bail was excessive. *Id.* at 7.

Here, by contrast, the district court heard that the charges against Pace stemmed from the long-term sexual abuse of his biological daughter, beginning when she was sixteen and resulting in the birth of two children. The district court also heard that Pace attempted to contact his daughter from jail, in violation of a protective order, and that she was "very nervous" because he told her "something to the effect of that he was capable of murder if he had ever found her with another man." On this record, we conclude that Pace failed to show that his bail was set with the express purpose of keeping him jailed and not to ensure his presence at trial. Thus, this factor does not favor further bail reduction.

11

**D. Other factors**

The district court heard evidence about Pace's work history, family ties, and criminal history. Regarding his work history, Pace testified that he had not had "a day-to-day 8:00 to 5:00 job" for some time. He stated that he was a musician and a skilled handyman who could do painting, yardwork, and general repairs, but he also claimed that he was disabled. He offered no evidence of consistent, gainful employment tying him to the community.

As to the family-ties factor, all counts of Pace's indictment charged him with prohibited sexual conduct committed against his biological daughter. Pace initially testified that he planned on living with his wife if released but later testified that his son would rent an apartment for him and that his family would be moving to Stephenville, which is farther from the court's jurisdiction. There was no evidence presented about the status of Pace's relationship with his family members since the charged offense or whether he maintains any contact with them aside from his son's willingness to help him secure an apartment. Nor was there any evidence that Pace had established ties to the community or that he had lived there for a significant amount of time.[4]

As to his criminal history, Pace testified that he was convicted of burglary of a habitation in 1978, driving with a suspended license in 1997, and driving while intoxicated in 2004. Pace also testified that he had "multiple arrests" but offered no evidence as to his conformity with the conditions of any previous bonds. Further, the district court heard that Pace was alleged to have violated a protective order relating to daughter, the alleged victim in this prosecution.

---

[4] Nothing in the record supports Pace's statement in his brief about the duration of his residency. *See* Tex. R. App. P. 38.1(i) (requiring arguments in brief to contain appropriate citations to record).

12

From this evidence, the district court have reasonably concluded, within the zone of reasonable disagreement, that Pace's work history and family ties did not offer a meaningful incentive for Pace to remain in the area pending his trial and, further, that his criminal history and alleged failure to comply with court-ordered restrictions weighed in favor of maintaining the $175,000 bond.

Overall, these factors considered collectively do not support a reduction in Pace's bond. Pace bore the burden of proving that his bond is excessive, and this record shows that the district court would not have abused its discretion by implicitly finding that Pace failed to meet that burden. If convicted, Pace faces the possibility of consecutive twenty-year sentences for his ten counts of engaging in prohibited sexual conduct with his daughter.[5] He presented no evidence indicating that the amount of his bail is excessive for ten counts of the second-degree felony offense of prohibited sexual conduct. We cannot conclude from this record that the district court abused its discretion by declining to further reduce the $175,000 bond amount. We overrule Pace's first issue.

## II. Pace is Not Entitled to Release Under Article 17.151

In his second issue, Pace contends that, under article 17.151 of the Texas Code of Criminal Procedure, he should have been released on bail because the State is not ready for trial. *See* Tex. Code Crim. Proc. art. 17.151, § 1(1).

Within this issue, Pace refers to the Governor's March 13, 2020 disaster declaration and the emergency orders issued by the Texas Supreme Court and the Texas Court of Criminal Appeals in support of his contention that there has been a violation of article 17.151 of

---

[5] Further, as we have noted, Pace could face consecutive life sentences if the State seeks enhanced punishment.

13

the Code of Criminal Procedure.  The First Emergency Order issued on March 13, 2020, stated in part that—subject only to constitutional limitations—all Texas courts were authorized to "modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted." *First Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9042 (Tex. Mar. 13, 2020), Misc. Docket No. 20-007 (Tex. Crim. App. Mar. 13, 2020). This order also authorized certain individuals—"not including a juror"—to participate remotely in hearings, depositions, "or other proceeding[s] of any kind." *Id*.  Less than a week later, a Third Emergency Order issued, stating that "[c]ourts must not conduct non-essential proceedings in person" that were "contrary to local, state, or national directives, whichever is most restrictive, regarding maximum group size." *Third Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9044 (Tex. Mar. 19, 2020), Misc. Docket No. 20-008 (Tex. Crim. App. Mar. 19, 2020).

In April, the Texas Supreme Court issued a Twelfth Emergency Order containing the same authorization to Texas courts to "modify or suspend any and all deadlines and procedures" and amending the first order to clarify that Texas courts were authorized to "[a]llow or require anyone involved in any hearing, deposition, or other proceeding of any kind— including but not limited to a party, attorney, witness, court reporter, or grand juror, but not including a petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means." *Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9059 (Tex. Apr. 27, 2020).  But by May, the Texas Supreme Court issued its Seventeenth Emergency Order that, among other things, allowed for petit jurors "to participate remotely, such as by teleconferencing, videoconferencing, or other means." *Seventeenth*

14

*Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9071 (Tex. May 26, 2020). And as our sister court of appeals has noted, the Texas Supreme Court has specified various guidelines by which jury trials should be conducted. *See Ex parte Sheffield*, 611 S.W.3d 630, 635 (Tex. App.—Amarillo 2020, pet. filed). Thus, contrary to Pace's contention, it is not "impossible" for Pace to have a jury trial.

Moreover, Pace has not shown a violation of article 17.151 of the Code of Criminal Procedure. The statute requires that:

> [a] defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, *if* the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony.

Tex. Code Crim. Proc. art. 17.151, § 1(1) (emphasis added). "Article 17.151 contains distinctive language mandating that a defendant shall be released upon two conditions," which are "the State's unreadiness for trial on the criminal action for which an accused is being held" and "that the accused has been detained pending trial for ninety days, if accused of a felony." *Gill*, 413 S.W.3d at 430. Subject to certain exceptions not applicable here,[6] if the State is not ready for trial within 90 days after the commencement of a defendant's detention for a felony, the trial court has two options: to release the defendant upon personal bond or to reduce the amount of bail. *See id*. at 583; *see also* Tex. Code Crim. Proc. art. 17.151, § 1(1).

---

[6] The requirement of release or bond reduction in subsection 1 of section 1 of article 17.151 does not apply if the detained person is serving another sentence at the time, if he is currently incompetent to stand trial, if he is being detained on another accusation for which the time period in 17.151 has not yet expired, or if he is being detained for violating conditions of a previous release relating to the safety of a victim of the alleged offense or to the safety of the community. *See* Tex. Code Crim. Proc. art. 17.151, § 2; *see also id.* arts. 17.152-.153 (addressing denial of bail for violation of court orders or bond conditions).

15

"We review a trial court's decision to deny relief on a claim that the State violated article 17.151 for an abuse of discretion." *Ex parte Craft*, 301 S.W.3d 447, 448-49 (Tex. App.—Fort Worth 2009, no pet.) (concluding that "it was not within the trial court's discretion to find the State was timely ready for trial" (citing *Jones v. State*, 803 S.W.2d 712, 719 (Tex. Crim. App. 1991))); *see Gill*, 413 S.W.3d at 431. "In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling." *Craft*, 301 S.W.3d at 449. A writ applicant bears the burden of proving the facts entitling him to relief. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

Additionally, the operation of article 17.151 is a question of statutory construction. Statutory construction presents a question of law that we review de novo. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). When interpreting a statute's language, we read words and phrases in context and construe them according to normal rules of grammar and usage. *Id.* We give effect to each word, phrase, clause, and sentence if reasonably possible. *Id.* If a statute's language is plain, we effectuate that plain language so long as doing so does not lead to absurd results. *Id.*

The State has the initial burden under article 17.151 to make a prima facie showing that it was ready for trial within the applicable time period. *Ex parte Smith*, 486 S.W.3d 62, 65 (Tex. App.—Texarkana 2016, no pet.); *Ex parte Ragston*, 422 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Jones*, 803 S.W.2d at 717);[7] *Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex. App.—Fort Worth 1993, no pet.). The State may make that showing by either announcing ready within the allotted time or by announcing retrospectively that it had

---

[7] Cases decided under the former Speedy Trial Act are instructive as to procedures under article 17.151. *Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991).

been ready within the allotted time. *Smith*, 486 S.W.3d at 65; *Ragston*, 422 S.W.3d at 906 (citing *Jones*, 803 S.W.2d at 717); *Brosky*, 863 S.W.2d at 778. Once the State makes its prima facie showing, the burden shifts to the defendant to rebut it. *Brosky*, 863 S.W.2d at 778 (citing *Jones*, 803 S.W.2d at 718). In the absence of a sufficient rebuttal, the trial court has the discretion to find the State was timely ready for trial. *Id.* (citing *Jones*, 803 S.W.2d at 719). The question of the State's "readiness" within the statutory time limit refers to the prosecution's preparedness for trial. *Behrend v. State*, 729 S.W.2d 717, 720 (Tex. Crim. App. 1987); *Brosky*, 863 S.W.2d at 778.

Here, Pace mistakenly contends that article 17.151 requires his release because the district court is currently unable to hold jury trials. As Texas courts have noted, article 17.151 is directed to the State's readiness for trial. *See Ragston*, 422 S.W.3d at 907 ("Traditionally, the concept of 'ready' refers to the prosecution's preparedness, not the trial court, its docket, or 'whatever problems [that] may have then judicially existed.'" (quoting *Santibanez v. State*, 717 S.W.2d 326, 329 (Tex. Crim. App. 1986)); *see also Ex parte Tucker*, No. 03-20-00372-CR, 2020 Tex. App. LEXIS 10435, at *15 (Tex. App.—Austin Dec. 31, 2020, no pet. h.) (mem. op., not designated for publication) (concluding that State was not ready for trial and could not have announced ready in absence of defendant's indictment).

Pace was arrested and jailed on October 29, 2019. Thus, article 17.151 required the State to make a prima facie showing that it was ready for trial within 90 days after Pace's jail detention began—i.e., January 27, 2020. *See* Tex. Code Crim. Proc. art. 17.151, § 1(1); *see also Nesbit v. State*, 227 S.W.3d 64, 69 (Tex. Crim. App. 2007) ("The operative rule is that the duration of a time period during which a person suffers specified restrictions upon his freedom by virtue of either a sentence of imprisonment or community supervision includes the first day in

17

which such restrictions upon freedom operate and excludes the anniversary date."). "[E]xistence of a charging instrument is an element of State preparedness." *Kernahan v. State*, 657 S.W.2d 433, 434 (Tex. Crim. App. 1983); *see McClellan v. State*, 701 S.W.2d 671, 675 (Tex. App.—Austin 1985), *aff'd*, 742 S.W.2d 655 (Tex. Crim. App. 1987). It is undisputed that Pace was indicted by a grand jury 70 days after his arrest, on January 7, 2020.[8]

Because the State made its prima facie showing of its readiness by indicting Pace within 90 days from the date that his jail detention commenced on October 29, 2019, the burden shifted to Pace to rebut it. *See Brosky*, 863 S.W.2d at 778 (citing *Jones*, 803 S.W.2d at 718). Pace failed to do so. His second issue contends only that the State is not ready because jury trials are being prevented in Burnet County. On this record, the district court would have had discretion to implicitly find that there was no article 17.151 violation because of the lack of a sufficient rebuttal from Pace. *See id.* (citing *Jones*, 803 S.W.2d at 719). We overrule Pace's second issue.

## CONCLUSION

We affirm the district court's order denying habeas corpus relief.

_____

Gisela D. Triana, Justice

---

[8] Further, after Pace's indictment, the State announced its readiness for trial to the district court. At the August 13 hearing on Pace's pretrial habeas corpus application, the State said that it was "ready, willing, and able to try [Pace] on the very first date that we receive [a setting]" and pointed to its announcement during the June 15 bond-reduction hearing that it was "perfectly fine with this getting set number one out of the gate when trials resume." The State further clarified that the DNA paternity testing was not required for Pace's prosecution and that it was willing to proceed to trial without those results.

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   February 25, 2021

Do Not Publish