**Ex parte George Robert JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1552–89.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 23, 1991.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall and Lisa C. McMinn, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CLINTON, Judge.

This is a petition for discretionary review following appeal from a denial of relief in a pre-trial writ of habeas corpus. Appellant was indicted for murder and capital murder and his combined bail on these two offenses was set at $550,000.00. Appellant has been in custody continuously on these charges since October 7, 1988. Pursuant to his writ of habeas corpus, a hearing was held on April 7, 1989, and continued on April 10, 1989. At the conclusion of this hearing the trial court reduced the combined bond to $105,000.00. Appeal was taken to the Second Court of Appeals. *Jones v. State,* 780 S.W.2d 506 (Tex.App.—Fort Worth, 1989).

On appeal it was contended, *inter alia,* that the habeas court erred in failing to reduce the bond to an amount the undisputed evidence shows appellant could meet, *viz:* $14,000.00. Both in the habeas court and on appeal appellant argued he was entitled to have his bail set at that amount by operation of Article 17.151, V.A.C.C.P. In relevant part that article provides:

"Sec. 1. A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount

of bail required, if the State is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony[.]"

The court of appeals held that the State failed to meet its burden of proof under this provision to show that it was ready for trial within 90 days of the commencement of appellant's detention. However, the court of appeals also agreed with the State that Article 17.151 "is a constitutionally impermissible infringement on the judicial branch by the legislature" and therefore "suffers similar constitutional defects as noted by the Court of Criminal Appeals in the Speedy Trial Act, article 32A.02." 780 S.W.2d at 509–510. See *Meshell v. State*, 739 S.W.2d 246 (Tex.Cr.App.1987). Finding thus that it violated Article II, § 1 of the Texas Constitution, the court of appeals struck down Article 17.151, supra. The court of appeals also noted the earlier holding of the Austin Court of Appeals in *Ex parte Danziger*, 775 S.W.2d 475 (Tex.App. —Austin 1989, pet. granted). In *Danziger* the Austin court had held that because Article 17.151 was promulgated in the same Senate Bill as was the Speedy Trial Act, and because that Senate Bill contained no savings clause, *Meshell v. State*, supra, had the effect of striking down the entire Senate Bill, including the section enacting Article 17.151. But see *Ex parte Delk*, 750 S.W.2d 816 (Tex.App.—Tyler 1988). Appellant's point of error was accordingly overruled.

We granted appellant's petition for discretionary review to address the constitutionality of Article 17.151, supra. Tex.R. App.Pro., Rule 200(c)(1), (2) & (4). We also granted the State's petition for discretionary review to consider whether the court of appeals erred in holding the State failed to meet its burden to prove it was ready for trial within the statutorily allotted 90 days. Rule 200(c)(2), supra.

1. We granted petition for discretionary review in *Danziger* in order to decide constitutionality of Article 17.151, supra, but ultimately dismissed the petition as moot when applicant in

I.

■ To the extent the court of appeals relied upon the Austin court's holding in *Ex parte Danziger*, supra, we believe it was in error.[1]

Both Article 32A.02 and Article 17.151 were promulgated by the 65th Legislature in Senate Bill 1043. See Acts 1977, 65th leg., ch. 787, pp. 1970 & 1972, §§ 1 & 2, eff. July 1, 1978. The bill contains no severability clause. Even so, should part of the bill be held invalid, as *Meshell* did, "the remainder of the statute must be sustained if it is complete in itself and capable of being executed in accordance with the intent wholly independent of that which has been rejected." *Tussey v. State*, 494 S.W.2d 866, at 870 (Tex.Cr.App.1973), and cases cited. Invalidity of a part of a statute "does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application[.]" V.T.C.A. Government Code, § 311.032, applicable to Senate Bill 1043, see § 311.002 and *Barbee v. State*, 432 S.W.2d 78, at 82 (Tex.Cr.App.1968) (Opinion on appellant's motion for rehearing). See also Article 54.01, V.A.C.C.P. Quoting 12 Tex.Jur.3rd, Constitutional Law § 42, the Court observed in *Meshell v. State*, supra, at 257:

" ... Invalidity of a part [of a legislative enactment] does not necessarily destroy the entire act, unless the valid part is so intermingled with all parts of the act so as to make it impossible to separate them, and so as to preclude the presumption that the legislature would have passed the act anyhow."

Article 32A.02 was enacted in § 1 of Senate Bill 1043. In § 4 of Senate Bill 1043 the Legislature also enacted Article 28.061, V.A.C.C.P. In *Meshell* the Court found Article 28.061 to be "the enforcement mechanism" for Article 32A.02, and concluded on that basis that the Legislature would not have promulgated one without the other. Thus, Article 28.061 was ruled

that case was brought to trial and convicted before we could dispose of the question. *Danziger v. State*, 786 S.W.2d 723 (Tex.Cr.App.1990).

invalid by virtue of the unconstitutionality of Article 32A.02. Article 17.151 was enacted in § 2 of House Bill 1043. In our view, however, unlike Article 28.061, Article 17.151 can be given effect wholly independently of Article 32A.02, without hindering or distorting the obvious legislative intent to provide assurance that an accused will not be held in custody indefinitely while the State is not at least prepared to bring him to trial. We hold that Article 17.151 was not effectively struck down by our opinion in *Meshell* simply because it was contained in the same Senate Bill. To the extent it held otherwise, the opinion of the Austin Court of Appeals in *Ex parte Danziger*, supra, is overruled.

■ It remains to determine whether Article 17.151 is itself unconstitutional for the same reason we held Article 32A.02 to be, *viz:* that in enacting it the Legislature encroached upon the prosecutor's discretion, as a judicial officer, in the preparation of cases for trial, in violation of Article II, § 1, supra.

## II.

In *Meshell v. State*, supra, this Court held that under Article II, § 1, "the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision." 739 S.W.2d at 254–55. The Court did not believe Article 32A.02 was sufficiently grounded in judicially pronounced standards for measuring whether the constitutional right to speedy trial is violated to justify legislative incursion upon the prosecutorial function. Specifically, the Court reasoned that Article 32A.02 failed to account for certain considerations set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), *viz:* the reason for delay between accusation and trial, whether the accused asserted the right to a speedy trial, and whether denial of the right worked to his prejudice. Because Article 32A.02 required that prosecution be set aside without due regard for all the constitutionally relevant factors, the Court held it to be an impermissible encroachment upon prosecutorial

discretion, in violation of separation of powers.

In the instant cause the court of appeals reasoned that Article 17.151 similarly "encroaches on the prosecution's discretion in the preparation of cases for trial because it forces the county and district attorneys of this state to either bring criminal prosecutions within a short period of time or allow the release of those defendants upon any bail, however low, that such defendants can afford." *Jones v. State*, supra, at 510. It does so without any consideration of whether 1) there may be some good reason for delay, 2) the defendant has requested a speedy trial, or 3) defendant has suffered prejudice to his cause on account of delay. Indeed, the court of appeals believed, in some respects Article 17.151 "is a tighter constraint on the prosecutor's discretion than those contained in" Article 32A.02, in that the latter at least provided, in its subsection 4(6), "for some circumstances under which a delay would not require discharge of the defendant." *Jones v. State*, supra, at 510 & n. 4.

The State now reiterates that Article 17.151 violates separation of powers inasmuch as, like Article 32A.02, it penalizes the dilatory prosecutor without accounting for the above factors relating his dilatoriness to a violation of the constitutional right to speedy trial. Undoubtedly, Article 17.151 may be perceived as to some degree exacting a penalty upon the State's unpreparedness for trial. Our opinion in *Meshell* notwithstanding, however, that perception does not end the analysis.

Courts in Texas have recognized two varieties of violation of separation of powers: "First, it is violated when one branch of government assumes, or is delegated, *to whatever degree*, a power that is more 'properly attached' to another branch. *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex.Cr.App.1973). The provision [Article II, § 1] is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers. *Rose v. State*, 752 S.W.2d 529, 535 (Tex.Cr.App.1987); *Me-*

shell v. State, [supra, at] 252 ...; see 16 C.J.S. *Constitutional Law* § 112 (1984)."

*Armadillo Bail Bonds v. State,* 802 S.W.2d 237 (Tex.Cr.App., 1990) (Emphasis in the original). We conclude that in promulgating Article 17.151, supra, the Legislature has neither "assumed" a prosecutorial function, nor "unduly interfered" with one.

"The power and authority of a state legislature is plenary and its extent is limited only by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself." *Government Services Insurance Underwriters v. Jones,* 368 S.W.2d 560, at 563 (Tex.1963). This Court noted accordingly in *Meshell* that "the Legislature could establish a new right under its general plenary power if that right did not infringe upon another department's separate power." 739 S.W.2d at 255, n. 13. Any time the Legislature promulgates a statute, it exercises a power "properly attached" to itself. In enacting Article 17.151, supra, providing for the conditional release of an accused "if the state is not ready for trial of a criminal action for which he is being detained within" a designated time period, the Legislature has exercised that power to establish a new right. In doing so the Legislature has not assumed a prosecutorial function. The only question is whether Article 17.151 infringes upon, or, in the language adopted by *Armadillo Bail Bond,* supra, "unduly interferes" with the prosecutor's discretion, as a judicial officer, in the preparation of his cases. Only if it does need we look for some right or power in the constitution, independent of the constitutionally assigned role of prosecutor *qua* judicial officer, that justifies legislative action and trumps the Article II, § 1 requirement of separation of powers. *Meshell v. State,* supra.

In our view Article 17.151 does not interfere unduly with the prosecutor's function. Contrary to the belief of the court of appeals, Article 17.151 actually represents far less of a constraint upon prosecutorial discretion than did Article 32A.02. A prosecutor unprepared within the time limits of Article 32A.02 stood to have the prosecution set aside.[2] By contrast, a prosecutor who is for whatever reason unprepared within the time allotted by Article 17.151 may nevertheless proceed with his case unmolested.[3] The only consequence is one which must be considered salutary under any accusatory system embracing the presumption of innocence until proven otherwise, *viz:* that an accused as yet untried and unreleased on bond will not suffer "the incidental punitive effect" of incarceration, *Ex parte Green,* 688 S.W.2d 555, at 557 (Tex.Cr.App.1985), during any further delay attendant to prosecutorial exigency.

We do not mean to suggest an accused has a constitutional right to have bail set at an amount he can meet, under Article I, §§ 11 or 13 of the Texas Constitution. This Court has never so held, and in fact on numerous occasions has remarked that in setting bail, "[t]he ability of accused to make bond is not alone controlling[.]" E.g., *Ex parte Cascio,* 140 Tex.Cr.R. 288, 144 S.W.2d 886 (1940); *Ex parte Vasquez,* 558 S.W.2d 477, at 480 (Tex.Cr.App.1977). But having found that Article 17.151, supra, does not "unduly interfere" with the prosecutorial function, we need not identify some independent constitutional authority to justify legislative action. *Meshell v. State,* supra.

Nor do we mean to suggest that Article 17.151 is a particularly efficacious means to its salutary end, since all a prosecutor has to do to prevent release of an accused who has been unable to make bail is to announce ready in a timely fashion, even if trial is thereafter delayed for other rea-

---

**2.** Moreover, though it was not a part of the Court's analysis in *Meshell,* supra, we note that the dismissal mandated by Article 32A.02 was to be "with prejudice" under Article 28.061, supra.

**3.** Whether Article 17.151 "unduly interferes" with what *is* arguably a uniquely judicial func-

tion to set a bail amount "sufficiently high [as] to give assurance that the undertaking will be complied with[,]" see Article 17.15(1), is a potentially prickly separation of powers question, but one that is not squarely presented today.

sons. Efficacy of a statute, *vel non,* however, is no ground for striking it down as a violation of separation of powers. Cf. *Ferrantello v. State,* 158 Tex.Cr.R. 471, 256 S.W.2d 587, at 591 (1952). The statute at least guarantees an accused will not be detained pretrial for an inordinate length on account of a lack of diligence by the State in preparing its case.

Finally, we are not unmindful of the State's sometimes legitimate concern that an accused released on pretrial bond may pose a danger to society. Cf. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Under Article I, § 11 of the Texas Constitution, however, all pretrial detainees "shall be bailable ..., unless for capital offenses, when the proof is evident;" or unless any of the provisions of Article I, § 11a, which contemplate denial of bail to the incorrigible or demonstrably dangerous accused, come into play. Even under Article I, § 11a, an order denying bail to an accused who has not been tried within 60 days of his detention must be set aside. Again, we do not suggest that any of these constitutional provisions mandate that bail be set at an amount the accused can meet. But surely it is within the plenary power of the Legislature to provide that under certain circumstances an accused be released pending the outcome of his trial. We do not deem any "penalty" deriving from the Legislature's having made the State's readiness for trial the operative circumstance to constitute such "interference" with the prosecutorial function as to evoke Article II, § 1. We hold that Article 17.151, supra, does not violate separation of powers.

### III.

In its petition for discretionary review the State argues that the court of appeals erred in holding the prosecutor failed to make a prima facie showing of readiness within the applicable 90 day period. Relying upon *Smith v. State,* 659 S.W.2d 828 (Tex.Cr.App.1983), the court of appeals held that the prosecutor's announcement that "the State has been ready for trial," was not sufficiently definite to show it was ready within the designated time.

As the court of appeals noted, this Court "has indicated that cases decided under the Speedy Trial Act (article 32A.02) are instructive on procedures under article 17.151. *Kernahan v. State,* 657 S.W.2d 433, 434 (Tex.Cr.App.1983)." *Jones v. State,* supra, at 509, n. 1. Speedy Trial Act cases have placed the burden upon the State to make a prima facie showing that it was ready within the applicable time period. The State may accomplish this either by announcing within the allotted time that it is ready, or by announcing retrospectively that it had been ready within the allotted time. *Barfield v. State,* 586 S.W.2d 538, 542 (Tex.Cr.App.1979); *Jordan v. State,* 639 S.W.2d 477, 478 (Tex.Cr.App.1982). It is not enough that the State appear in open court after the running of the applicable period and declare itself at that time ready for trial. *Smith v. State,* supra; *Scott v. State,* 634 S.W.2d 853 (Tex.Cr.App.1982).

■ The State first argues that an announcement that the State "has been" ready "refers to readiness occurring in the past and continuing up to the time the statement was made." The State contends this statement of past readiness therefore "fell within the 90–day time limit." Appellant was arrested on October 6, 1988. The prosecutor's announcement of ready occurred on the second day of the hearing on the writ of habeas corpus, on April 10, 1989. Coming as it did roughly 150 days after appellant's arrest, this announcement, in isolation, does not exclude the possibility that the State did not become ready until some time anterior to April 10, 1989, but after the lapse of the 90 day period required by Article 17.151, Sec. 1(1), supra.

■ The State also contends that from the full context of the prosecutor's statement it is clear he was informing the trial court that the State "has been ready" for trial as of the filing of the indictment in these causes, which occurred on November 8, 1988, well within the 90 days allotted. The prosecutor's entire statement, as set out in the State's brief, is as follows.

"Your Honor, with regard to the matter presently being heard for writ,

George Jones, capital murder, and another pending murder case, Your Honor, shortly after this particular matter was brought to the attention of the District Attorney's Office, around September— excuse me, going into October of 1988, Your Honor, I was assigned to assist Mr. Bob Gill in the prosecution of this particular case, prior to its indictment on November the 8th of 1988.

Working with Mr. Gill, Your Honor, we reviewed the files.

The detective, in connection with this particular matter, Detective SoRelle, with the Fort Worth Police Department, made some efforts and did, in fact, talk with Mr. Eric Brager, also known as Eric Johnson. And subsequent to that talked to George Jones, the Defendant in this particular matter.

And in connection with the State's readiness, Your Honor, I simply offer for the Court's consideration my testimony, that subject to Judge Kredell's availability, his courtroom's availability, the assignment of this particular case to his court, the State has been ready for trial, at least to begin the jury selection process in this particular matter, and present what evidence was available to the State for purposes of this hearing."

Prior to this statement by the prosecutor, one of appellant's attorneys testified at the writ hearing that he had been allowed to review the State's file. There he discovered the statement of a witness he considered crucial to the State's ability to make a case against appellant. This witness, Eric Brager, was incarcerated in the Chino Institute for Men in Chino, California. Detective SoRelle of the Fort Worth Police Department had taken Brager's statement in Chino on October 27, 1988. Given this background, the trial court could reasonably have construed the prosecutor's announce-ment of ready to relate back to the filing of the indictment on November 8, 1988, by which time the State had interviewed its chief witness, Brager. Such announcement would suffice to establish a prima facie showing of readiness well within the 90 day limit. See *Carter v. State*, 664 S.W.2d 739, 740 (Tex.App.—Waco 1983, no pet.). We therefore agree that the court of appeals erred in holding that no prima facie showing was made, and turn next to the question whether appellant rebutted that prima facie case. *Barfield v. State*, supra.

■ Evidence that rebuts a prima facie showing of readiness "may consist of, among other things, a demonstration that the state did not have a key witness or piece of evidence available by the last day of the applicable time limit so that the state was not ready for trial within that time limit." *Id.*, at 542. See also *Behrend v. State*, 729 S.W.2d 717, at 720 (Tex.Cr.App. 1987), and cases cited therein. The State did not controvert that Eric Brager was a key witness in its case. Appellant presented testimony from a deputy district clerk of Tarrant County that Brager was also under indictment in three causes, and warrants for his arrest were issued in all three. These warrants were never executed, but the Sheriff's Department sent a detainer to Chino, which, as the habeas court judicially noticed, means "that they will hold him for the State of Texas after he completes his sentence" in California. The evidence is undisputed that neither subpoena nor bench warrant nor any other lawful mechanism to secure Brager's presence for appellant's trial had issued at any time during the 90 day statutory period, or even by the time the habeas hearing was held some 150 days following appellant's arrest.[4]

Presented with similar circumstances, several courts of appeals have held that

4. There is no indication in the record that the State had commenced proceedings to bring Brager to Tarrant County to stand trial in the causes pending against him pursuant to Article 51.14, V.A.C.C.P., Interstate Agreement on Detainers, to which both Texas and California are party states. See West's Cal.Ann.Penal Code, § 1389. Nor is it shown that the State ever attempted to subpoena Brager to testify against appellant under Article 24.28, Uniform Act to Secure Attendance of Witnesses from Without State, to which Texas and California are also party states. See West's Ann.Cal.Penal Code, § 1334.3. See also Article 24.29, V.A.C.C.P., Uniform Act to Secure Rendition of Prisoners in Criminal Proceedings, to which Texas, but not California, is a party state.

under various provisions of Section 4 of Article 32A.02, absence of a key witness was an "exceptional circumstance" that would toll the running of the statutory period by which the State must prove its readiness. E.g., *McCartin v. State*, 662 S.W.2d 794 (Tex.App.—Corpus Christi 1983, pet. ref'd); *Karpeal v. State*, 628 S.W.2d 520 (Tex.App.—Fort Worth 1982, pet. ref'd). Unlike Article 32A.02, however, Article 17.151 contains no such provisions excluding certain periods from the statutory time limit to accommodate "exceptional circumstances."

The State cites several cases for the proposition that showing an important witness is unsubpoenaed or temporarily out of pocket does not necessarily mean the State is not ready for trial. It is true that we have held that issuance of subpoenas is not essential to the State's readiness for trial. *Philen v. State*, 683 S.W.2d 440, 444 (Tex. Cr.App.1984). See also *Garcia v. State*, 625 S.W.2d 831, 833 (Tex.App.—Houston [14th] 1981, pet. ref'd). And in *Baty v. State*, 638 S.W.2d 185 (Tex.App.—Dallas 1982, pet. ref'd), the court of appeals held that a showing that the complaining witness was in basic training in another state was not enough to rebut the State's prima facie announcement of ready. In that case, however, the State showed it "could have secured the presence of the complainant easily within twenty-four hours notice."

*Id.*, at 186. Here the evidence shows more than the mere fact that Brager had yet to be subpoenaed; it also shows Brager was not otherwise present or readily available to testify at any time during the 90 days following appellant's arrest. On this state of the record it was not within the trial court's discretion to find the State was timely ready for trial. *Barfield v. State*, supra. We hold that under Article 17.151, supra, appellant is entitled to "be released either on personal bond or by reducing the amount of bail required[.]"

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the habeas court for further proceedings not inconsistent with this opinion. Motion for rehearing will not be entertained in this cause.

McCORMICK, P.J., joins Parts I. and II., but dissents to Part III.

WHITE, J., concurs in the result.

MALONEY, J., not participating.