

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00099-CR
No. 02-21-00100-CR
No. 02-21-00101-CR

_____

## Ex parte Dimonique Dwayne McKinney

---

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court Nos. DC78-CR2020-1045, DC78-CR2020-1047, DC78-CR2020-1077

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Dimonique Dwayne McKinney is incarcerated awaiting trial on two charges of aggravated robbery and one charge of capital murder. The trial court initially set bail at $500,000 for each charge.[1] In January 2021, McKinney applied for a habeas corpus writ on the ground that his bail was excessive, oppressive, and beyond his financial means. After a hearing, the trial court partially granted his requested relief; it lowered the bail amounts on the aggravated-robbery charges to $250,000 but kept the capital-murder bail at $500,000. McKinney now appeals the trial court's decision, but because he failed to meet his burden to establish the bail amounts were excessive or oppressive, we affirm the trial court's order partially granting the requested relief.

## Background

McKinney is accused of involvement in three separate criminal incidents. The State alleges that in January 2020, he met a man under the pretense of selling marijuana but robbed the man instead. It further alleges that in June 2020, McKinney robbed another man at gunpoint, also under the guise of selling marijuana. Finally, the State alleges that after the June 2020 aggravated robbery, McKinney shot and killed Jason

---

[1]McKinney's application for a habeas corpus writ also mentioned two other charges, one for unlawful discharge of a firearm and one for drug possession. However, he filed his application labeled with the cause numbers of the aggravated-robbery and capital-murder charges, he asked the trial court to take judicial notice of only those causes, and the trial court's order addresses the bail connected with only those charges. We will therefore consider only the aggravated-robbery and capital-murder charges in this appeal.

Baum after burglarizing a drug house and then attempting to rob Baum just outside the drug house.

The hearing on McKinney's application for habeas relief was brief; the testimony is only 20 pages of the record and only McKinney's brother, Gerrick McKinney, testified. Three exhibits were admitted: McKinney's unsworn declaration of his inability to hire counsel, an affidavit by McKinney's mother, and an affidavit by Gerrick. To summarize the testimony and the exhibits, McKinney and his family did not have the money or assets to meet the $1,500,000 bail. According to Gerrick, the family had managed to come up with $500 at the time of the writ hearing. Gerrick confirmed that the family had few resources; that McKinney did not have a car, jewelry, or anything else of value that he could sell or trade; and that McKinney did not have cash on hand to meet bail.

Gerrick also described McKinney's family ties in Wichita Falls. He testified that they had grown up in Wichita Falls and their grandparents, mother, he, and their two older brothers all lived in Wichita Falls. Gerrick, their mother, and their grandfather all lived in the same home, and McKinney would live there as well if released. Gerrick and their mother testified that they would help McKinney comply with any bond conditions and report any violations committed by McKinney.

Gerrick admitted that 19-year-old McKinney was unemployed when he was arrested and had last been employed in the winter of 2019. Gerrick also admitted that

McKinney had previously spent time on juvenile probation and in a juvenile detention center.

Gerrick testified that he was aware of the nature of the charges McKinney faced but unaware of the particulars; specifically, that he stood accused of using a gun to rob and kill people. Gerrick was also unaware that an acquaintance and McKinney's accused codefendant had told police that McKinney was involved in the crimes.

In closing, McKinney's attorney requested a bail reduction because McKinney could not meet the $1,500,000 bail amount and had strong family ties to the community and family support. He did not propose a specific amount for reduced bail on any of the charges, but simply asked that "the Court set a reasonable bond in this case in an amount that Mr. McKinney can make." In response, the State argued that the seriousness of the allegations, particularly the alleged use of a firearm, and McKinney's history in the juvenile justice system justified a high bail amount, but the prosecutor suggested the bail could be reduced to $250,000 on each charge.

The trial court partially agreed with the State and reduced the aggravated-robbery bails to $250,000 each; it kept the capital-murder bail set at $500,000.

## Discussion

## I. Standard of Review and Applicable Law

Setting bail is a fact-driven determination that must be judged on a case's own unique facts. *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (per curiam) (mem. op., not designated for

4

publication). We review the trial court's decision in setting a bail amount for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). We will not disturb the decision if it was within the zone of reasonable disagreement. *Ex parte Wood*, 308 S.W.3d 550, 552 (Tex. App.—Beaumont 2010, no pet.).

Bail is primarily intended to assure the defendant's presence for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). In setting bail, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). The accused has the burden to show that the bail amount is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

The court's discretion in setting a bail amount is statutorily governed by the following rules:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. Other circumstances to be considered include the accused's work record, family and community ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *See Rubac*, 611 S.W.2d at 849–50.

## II. Application

### A. Nature of the Offenses

The nature of the offenses and the possible sentences are the "primary factors" we consider in evaluating a bail decision. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd). McKinney stands charged with three serious crimes, the most serious of which is capital murder. According to the arrest-warrant affidavit, police found Baum lying dead in an alley late at night behind a home where police later discovered evidence of drug trafficking: "a substantial amount of marijuana," "a large amount of US currency," scales, notes and ledgers indicating narcotics sales, and a handgun. In the days that followed, police identified Martez Vrana as having driven McKinney and Sammy Worthy to the drug house on the night of the

murder. Vrana allegedly told police that he dropped them off around the corner, they were gone for approximately 20 minutes, and when they returned "they seemed out of breath and [McKinney] was wearing an orange ski mask." Upon a warranted search of McKinney's apartment, police located a gun consistent with the caliber of shell casings found at the murder scene and an iPhone which contained the drug house's address in the search history.

The arrest-warrant affidavit recounted Worthy's confession to police that he and McKinney had received information of a possible "lick"[2] of the drug house and had driven there with Vrana and a fourth man, Antwan Williams. The affiant continued,

> Sammy said that Martez and [McKinney] were attempting to remove a "chest" from the property when the victim pulled into the alley. At this time, [McKinney] approached the victim and told him to give me everything you got. Sammy then began hearing gunshots so he ran back to the vehicle with Antwan. Martez[] ran behind them firing a weapon down the alley as well. When [McKinney] returned to the vehicle[,] Martez asked him why he shot[ and McKinney] said the victim was reaching for his waist, and he knows people don't carry money in the waistband.

The affiant also alleged that an unidentified person had contacted police and informed them that McKinney "had told him that he was the person that shot and killed Jason Baum . . . , and [he had] provided additional details about the crime that ha[d] not been released to the public."

---

[2]The affiant police officer identified "lick" as slang for a robbery.

The arrest-warrant affidavits for the January and June 2020 aggravated robberies also allege violent behavior by McKinney. According to the January 2020 affidavit, officers heard "several gunshots" near a nightclub and a vehicle then approached them stating that they were just "shot at." Police later learned that Martez had driven McKinney to the nightclub's parking lot, where McKinney met with the complainant, Noah Leverett. Leverett alleges that he met McKinney expecting to purchase marijuana but that McKinney stole his money instead; according to Leverett, McKinney then got back in Martez's car, and when they drove away, Leverett and his girlfriend followed them but someone in Martez's car shot at them and struck the car's windshield.

The June 2020 aggravated-robbery arrest-warrant affidavit recounts complainant Payton Davis's report to police that he had met up with McKinney and Worthy to purchase marijuana, but McKinney had demanded Davis's money. According to Davis, Worthy hit him in the face with his gun when Davis refused to hand over his money. Davis recalled seeing a gun in McKinney's waistband. Davis alleged that Worthy and McKinney stole approximately $1,200 from him.

As we have stated, these are serious allegations of violent crimes, one of which resulted in someone's death. If convicted of capital murder, McKinney faces either a death sentence[3] or a life sentence without parole. Tex. Penal Code Ann. § 12.31(a). If

---

[3]It is unclear from the record before us whether the State is seeking the death penalty in this case.

convicted of either aggravated-robbery charge, he faces a sentence of five to ninety-nine years or life and a possible fine of up to $10,000. *Id.* § 12.32.

Given the seriousness of the charges and the potential of receiving life sentences (or, possibly, a death sentence), there is a heightened interest in securing McKinney's appearance at trial. *See Ex parte Cardenas*, 557 S.W.3d 722, 731 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) ("Because Cardenas faces a significant potential sentence, possibly a life sentence, the trial court could have reasonably concluded that there is a possibility that Cardenas will not appear for trial and that bail should 'be sufficiently high to give reasonable assurance that' Cardenas will appear at trial."). This factor therefore weighs in favor of affirming the trial court's order.

## B. McKinney's Community Ties

Testimony on McKinney's behalf established that he has roots in Wichita Falls—his mother, grandparents, and brothers live there, and his mother stated McKinney could live with her, his grandfather, and his brother. Gerrick and his Mother promised to ensure McKinney's compliance with his bond conditions upon release. McKinney therefore established family ties but little else—there was no testimony that he had any community connections outside of his family's presence, and he had been unemployed at the time of his arrest. Community ties are not limited to the accused's family's presence, and the trial court could have reasonably concluded that McKinney's family's presence did not strongly assure his appearance at trial. *See, e.g., Ex parte Nimnicht*, 467 S.W.3d 64, 68 (Tex. App.—San Antonio 2015, no pet.) ("Though Nimnicht

9

presented some evidence he has ties to the San Antonio community through his mother's residency, based upon his unemployment and lack of other family or community involvement, this factor weighs in favor of a conclusion the trial court could have reasonably concluded Nimnicht's community ties were not a strong assurance of his appearance at trial."). This factor therefore weighs in favor of affirming the trial court's order.

### C. McKinney's Inability to Post Bail

McKinney's arguments focused primarily on his lack of assets and inability to post a bond. But while Gerrick testified the family had only been able to gather $500, there was no evidence that anyone had contacted any bondsman regarding the minimum amount required to post a bond or had made any other effort to post bail. *See Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd) (noting that it is incumbent upon the applicant to show that he has made an effort to furnish bail in the amount set).[4]

Even if we were to assume that the minimum amount required to post bail is significantly higher than $500—a likely assumption—McKinney's ability to fund such a bond is not dispositive to whether his bail should be reduced. *See Ex parte Jones*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). A defendant's simple inability to meet the

---

[4]It is also notable that McKinney did not specify an amount he believed to be a reasonable bail for any of the charges.

bail set by the trial court does not automatically render it excessive; to hold otherwise would completely eliminate the trial court's role in setting bond and place the accused "in the unique posture of determining what his bond should be." *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.) (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth, 1982, pet. ref'd)).

We therefore cannot conclude that McKinney's inability to post the previously set cumulative bail of $1,500,000 renders the modified bail an abuse of the trial court's discretion.

## Conclusion

Based on our review of the record, we cannot conclude that the trial court abused its discretion by partially granting the requested relief and lowering the cumulative bail amount to $1,000,000. We affirm the trial court's order.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 21, 2021

11