**Affirmed and Memorandum Opinion filed May 18, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00448-CR

## EX PARTE GUILLERMO GAYOSSO

**On Appeal from the 506th Judicial District Court**
**Waller County, Texas**
**Trial Court Cause No. 22-02-17997**

## MEMORANDUM OPINION

Appellant Guillermo Gayosso was indicted for continuous sexual assault of a child and arrested on February 15, 2022. Appellant did not post bond at the set amount of $500,000. After being detained for 90 days, he filed an application in June 2022 for writ of habeas corpus under Code of Criminal Procedure article 11.24 seeking either reduction of the bond to an amount he could afford or release on personal bond. *See* Tex. Code Crim. Proc. Ann. art. 17.151, § 1(1) (defendant who is detained in jail accused of felony "must be released" on personal bond or by reducing required amount of bail if State is not ready for trial within 90 days); s*ee also Ex Parte Ragston*, 422 S.W.3d 904, 906–07 (Tex. App.—Houston [14th Dist.]

2014, no pet.). The trial court denied habeas-corpus relief pursuant to article 17.151 and reduced the bond to $250,000.[1] In three issues, appellant complains on appeal of both actions. Tex. Code Crim. Proc. Ann. art. 44.04(g). We affirm.

## I. ANALYSIS

In issue one, appellant argues the trial court erred by denying relief pursuant to article 17.151 because the State did not make a prima facie case that it was ready for trial within the statutory 90-day time period. In issue two, appellant argues that the trial court erred because even if the State did announce ready within the 90-day time period provided in article 17.151, he rebutted the State's announcement. In issue three, appellant argues the trial court abused its discretion by setting bond at $250,000.

We begin with appellant's claims that the trial court erred in denying relief under article 17.151

### A. Article 17.151

Article 17.151 provides:

> A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from the commencement of his detention if he is accused of a felony[.]

Tex. Code Crim. Proc. Ann. art. 17.151, § 1(1). The State has the initial burden to

---

[1] No writ of habeas corpus was issued in this case, although the trial court did hear the merits of appellant's requested relief. If the district court holds a hearing on the merits of a Code of Criminal Procedure chapter 11 habeas-corpus proceeding and denies the requested relief on the merits without previously granting the application and ordering issuance of a writ of habeas corpus, then the court of appeals nonetheless has jurisdiction to review the denial of the requested relief on the merits. *Ex parte Hargett*, 819 S.W.2d 866, 868 (Tex. Crim. App. 1991); *see* Tex. Code Crim. Proc. Ann. art. 44.02; *see also* Tex. Code Crim. Proc. Ann. art. 11.24 (writ of habeas corpus appropriate for excessive bail).

make a prima facie showing that it was ready for trial within the applicable time period. *See Ex parte Jones*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991). "The State may accomplish this either by announcing within the allotted time that it is ready, or by announcing retrospectively that it had been ready within the allotted time." *Id*. A statement that fails to exclude the possibility the State did not become ready until after the 90-day period fails to satisfy the State's burden. *See id.*

Once the State makes its prima facie showing, the burden shifts to the defendant to rebut it. *See id.* at 718. For purposes of article 17.151, evidence that rebuts a prima facie showing of the State's readiness for trial may consist of, among other things, a demonstration that the State did not have a key witness or piece of evidence available by the last day of the applicable time limit. *See id.* at 719. In the absence of a sufficient rebuttal, the trial court has the discretion to find the State was timely ready for trial. *See id.*

The trial court held a hearing on appellant's application. The hearing record reflects the State clearly announced it "is ready." The question at issue was whether the State *was* ready on or before May 16, 2022. Appellant contended that State was not ready because (1) a recording of the complaining witness's statement had not been turned over to the defense and (2) neither the appellant's nor the complaining witness's grand-jury testimony had been transcribed and made available to the defense.

The State responded that the recording of the complaining witness's statement cannot be put online and must be accessed in-person. When asked by defense counsel, "when did you get the statements of the complaining witness from the detective," the State responded, "January 6, 2022." Accordingly, the record reflects the recording of the complaining witness's statement was available and could have been accessed by the defense before May 16, 2022.

3

Regarding the grand-jury testimony, the State informed the trial court the complaining witness's testimony was not recorded. Appellant's grand-jury testimony, required by law to be recorded, had been transcribed and the State had received the transcription in its office on the day of the hearing, but it had not been uploaded. The State further explained that the defense had not filed the necessary petition to access the grand-jury testimony. *See* Tex. Code Crim. Proc. Ann. art. 20A.205 (grand-jury testimony may only be disclosed after petition by defendant). The State represented to the trial court it had been ready since February 1, 2022, when appellant was indicted by the grand jury:

> . . . I was never asked, Judge, if we were ready previously for trial. I am not going to stand here and say because I don't know what [attorney for the State on the case] has said to him because I wasn't present.
>
> But from my review of the record from our records [sic] we have been because we are under no obligation to turn over any grand jury testimony of the defendant without a petition. So as far as I am concerned, we have been ready for trial since he has been indicted.

The trial court then denied appellant's motion as to the 90-day rule and stated, "because . . . they're ready . . . [a]nd I do agree with them, that if you want to see grand jury testimony you have to make the initial request of that. There is nothing in the record that I see where that request was made."

We conclude the State made a prima facie showing that it was ready before the 90-day period expired and overrule issue one.

In his second issue, appellant claims the State's prima facie case was sufficiently rebutted. In his brief, appellant relies on the fact the State did not receive the transcription of his grand-jury testimony until the day of the hearing. The record does not reflect appellant filed a petition to review the transcription of the grand-jury testimony. We are aware of no authority, and appellant cites none,

4

supporting appellant's argument that the State was not ready for trial because it did not transcribe grand-jury testimony without a proper petition.

Because appellant's rebuttal was insufficient to establish the State was not ready before May 16, 2022, the trial court did not abuse its discretion. *See Ex parte Jones*, 803 S.W.2d at 719. We overrule issue two.

## B. Excessive bond

Appellant sought a reduction of bond from $500,000 to $10,000. The trial court reduced appellant's bond to $250,000. In issue three, appellant claims that bond is excessive.

### 1. Standard of review

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. The decision regarding a proper bail amount lies within the sound discretion of the court. Tex. Code Crim. Proc. Ann. art. 17.15. Accordingly, we review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The purpose of our review is to determine whether the trial court's decision was made without reference to any guiding rules or principles of law, or in other words, whether the decision was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990 & 1991).

### 2. Applicable law

Code of Criminal Procedure article 17.15 provides that "bail and any conditions of bail shall be sufficient to give reasonable assurance that the

undertaking will be complied with[;]" however, "[t]he power to require bail is not to be used to make bail an instrument of oppression." Tex. Code Crim. Proc. Ann. art. 17.15(1), (2). The trial court must consider the nature of the defendant's offenses and the circumstances under which he allegedly committed them, including whether the offense was one considered to be violent. Tex. Code Crim. Proc. Ann. art. 17.15(3). The trial court must also consider a defendant's ability to make bail, the defendant's citizenship status, defendant's criminal history record,[2] as well as the future safety of the alleged victim and the community. Tex. Code Crim. Proc. Ann. art. 17.15(4), (5), (6), (7). Apart from these statutory considerations, Courts may also consider the following factors: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) the aggravating circumstances alleged to have been involved in the charged offense.[3] *Ex parte Rubac*, 611 S.W.2d at 849–50.

---

[2] The criminal history record for the defendant is obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public-safety-report system developed under Code of Criminal Procedure article 17.021. *See* Tex. Code Crim. Proc. Ann. art. 17.15(6); *see also* Tex. Code Crim. Proc. Ann. art. 17.021 (public safety report).

[3] It is unclear whether the recently passed Damon Allen Act applies to appellant's case. *See* Damon Allen Act, 87th Leg., 2d C.S., ch. 11, Tex. Gen. Laws. The Act applies only to persons arrested on or after January 1, 2022. *See* Damon Allen Act, 87th Leg., 2d C.S., ch. 11, § 24. The record does not indicate when appellant was arrested. The Act created a "public safety report system," developed and maintained by the Office of Court Administration of the Texas Judicial System, which compiles background information about defendants for use by magistrates at article 17.15 bail hearings. *See* Damon Allen Act, 87th Leg., 2d C.S., ch. 11, § 5, arts. 17.021, .022 (codified as Tex. Code Crim. Proc. arts. 17.021, .022). The Act clarifies a list of offenses that will preclude an individual from obtaining release on personal bond. *See* Damon Allen Act, 87th Leg., 2d C.S., ch. 11, § 5–7 (codified as Tex. Code Crim. Proc. arts. 17.03 (b-2), (b-3), .027). Assuming the Damon Allen Act applies to appellant's case, the record does not refer to or address the public safety report. However, it appears that the trial court considered appellant's criminal background history, which would have been drawn in part from the

The defendant bears the burden to prove the bail set is excessive. *Id*. at 849.

### 3.    The evidence

Appellant submitted to a polygraph examination, which was attached to appellant's application. It reflects "No Deception Indicated." The background section of the examination reflects that from 2003 to 2010 appellant was living in the home of J.J.G. and his wife, their daughter (the complainant) and two sons. Appellant was working for J.J.G.'s house painting business. In 2010, appellant quit working with J.J.G. and moved out. Appellant has not seen either J.J.G. or his family since then. After seeing appellant in a store, the complainant filed a complaint alleging sexual abuse.

The attorney representing appellant in this proceeding, Paul Mewis,[4] averred that he has known appellant for seven years, considers appellant a good friend, has socialized with appellant, and appellant has been his guest. Mewis has frequented appellant's place of employment, Q Bar, and is familiar with appellant's work ethic. Mewis described appellant as a dedicated, hardworking employee on whom the owner of Q Bar relies. Mewis averred that he knows appellant's friends and other associates and that appellant has an excellent reputation as a law-abiding citizen. Mewis will be a character witness on appellant's behalf at trial.

Mewis stated appellant is not a flight risk. Initially, Mewis informed appellant that he was indicted for a felony that did not allow for probation and, if convicted, carried a possible sentence of twenty-five years to life, with no

_____

public-safety-report system. There is no argument on appeal that the trial court did not consider all the circumstances and factors required by law. *See* Damon Allen Act, 87th Leg., 2d C.S., ch. 11, § 5. art. 17.028 (codified as Tex. Code Crim. Proc. art. 17.028) ("a magistrate shall order, after individualized consideration of all circumstances and of the factors required by Article 17.15(a), that the defendant be . . . granted surety or cash bond with or without conditions").

[4] Mewis will not be representing appellant at trial.

possibility of parole, and appellant still chose to surrender himself in court. According to Mewis, appellant had more than a week to flee had he chosen to do so. Mewis has spoken with appellant's immigration lawyer who stated that appellant has always been available for appearances in his pending immigration case, which is set for a hearing in November 2023.

Mewis believes appellant does not have funds to post a bond larger than $10,000 and electronic monitoring would be sufficient to ensure appellant's appearance. Mewis avers that appellant would not pose a threat to the complainant or the community in general.

According to Mewis, appellant's incarceration prevents him from rendering any assistance to his court-appointed attorney to prepare his defense. Mewis asserts appellant needs his freedom to obtain records from his bank, email, phone, etc. considering current privacy laws and that those records are necessary to defend a thirteen-year-old offense.

Mewis has obtained records of appellant's bank balances and some of his debt. He has verified those balances. According to Mewis, appellant has $1,645.05 available in bank accounts and owes approximately $17,932.29 in credit-card debt.

The affidavit of attorney Cris W. Craft, a former Harris County assistant district attorney, is also attached to appellant's application. Craft averred that he has known appellant for at least ten years and they have become very good friends. Craft and appellant "have done countless number of things together, including attendings Astros and Texans sporting events." Craft has introduced appellant to his "closest and dearest friends, including both of [his] children."

Craft stated that appellant is the reason he frequents Q Bar Katy over other establishments and credits appellant with its popularity. According to Craft, he and

the owner have spoken about appellant many times and the owner tremendously values appellant, as a person and as his manager. Craft knows many of the same people as appellant, including his employees, friends, and acquaintances and appellant has an excellent reputation for being law-abiding.

Appellant has told Craft that he enjoys living here and has no intention of returning to Mexico. Craft has spoken with appellant regarding his immigration status and is aware that he has a hearing coming up.

Appellant told Craft that he had been asked to appear over a criminal matter, and appellant said that he would appear to help clear it up. Craft averred that appellant "had plenty of time to flee to Mexico since learning of this charge" but had never even mentioned traveling to Mexico. Craft does not consider appellant to be a flight risk for many reasons, including that he loves it here, his job, and his personal life.

Craft stated that appellant works extremely hard but cannot post a bond of more than $10,000 or $20,000, and that would be with the help of friends. Although Craft did not know how much appellant makes, he opined that appellant lives paycheck to paycheck. Craft believes electronic monitoring would guarantee appellant's appearance. Craft did not believe appellant is a threat to the community and stated that he would be glad to increase his contact with appellant to "every other day or so."

Craft stated that appellant has been charged with a serious offense and it will take a substantial number of hours to prepare a defense. According to Craft, it will be necessary to collect numerous records stretching back thirteen years when the offense allegedly occurred. Appellant's continued confinement will extremely hamper his defense because many of the records, such as phone and email, will require appellant's personal involvement.

The affidavit of Ebrahim Manoochehri, the owner of Q Bar and Grill, is also attached to appellant's application. Manoochehri has known appellant for eight years. In 2018, Manoochehri promoted appellant to manager and provided him with a set of keys to the business and the safe. Manoochehri trusted appellant to guard the daily cash receipts and to hire and fire employees. Appellant was also responsible for ensuring customers were not overserved and safely got home. Appellant lived in the apartments across from Q Bar and was available if there was a problem.

Manoochehri stated that he was aware appellant is from Mexico and is attempting to get his green card. Manoochehri knew appellant had hired an immigration lawyer and was told appellant has a hearing scheduled in November 2023. Manoochehri averred appellant has been in his home on many occasions and around his young grandchildren.

Manoochehri is holding appellant's job open in the event he is released on bond. Appellant's roommate has been renting the apartment and appellant will be able to continue living there if released. Manoochehri believes appellant is not a flight risk and will appear for all court hearings and trial. Appellant has told Manoochehri that he wants to prove his innocence.

Manoochehri knows other customers of Q Bar, some of whom are lawyers, and they have stated they would help appellant if he is released on a reasonable bond. Manoochehri averred that if released and allowed to return to work, appellant would be making, at most, $1,000 a week.

4. Analysis

Although appellant provided ample evidence of his inability to make bail above $10,000 and the likelihood that he would appear for trial, those two factors

are not the only factors a trial court must consider *See* Tex. Code Crim. Proc. Ann. art. 17.15; *Ex parte Rubac*, 611 S.W.2d at 849–50. The trial court also had to consider the nature of the offense, the future safety of the victim of the alleged offense, law enforcement, and the community. The alleged offense here— continuous sexual abuse of a young child—is an offense involving violence, as defined by Code of Criminal Procedure article 17.03, and carries a minimum sentence of twenty-five years without the possibility of parole. Given the nature of the offense and considerations of the future safety of the community and the victim, the trial court expressed concern that the victim of the alleged offense is in the same community as appellant[5] and that appellant sometimes works as a house painter and would therefore be around children. This factor weights in favor of a higher bail amount as set by the trial court.

The trial court had to consider appellant's criminal history. Tex. Code Crim. Proc. Ann. art. 17.15(6). Here, however, there was no record of a prior criminal history or that appellant has failed to comply with previous bond conditions. Finally, the trial court had to consider appellant's citizenship status. Tex. Code Crim. Proc. Ann. art. 17.15(7). According to the State, appellant entered the country illegally and is currently under an U.S. Immigration and Customs Enforcement hold. Evidence was presented that appellant has made requisite appearances related to the immigration hold. According to the affidavits, appellant was aware of the charged offense and had the opportunity to flee, but voluntarily turned himself in. However, appellant's citizenship status is a factor that weighs in favor of a higher bail amount as set by the trial court.

---

[5] Contrary to appellant's assertion in his reply brief, the record indicates the complainant saw appellant in a store in the community and then filed a complaint. Thus, there was evidence other than the State's claim that appellant was in the same community.

Although the affidavits established appellant's work history and ties to the community for the past eight years, there was no evidence of family ties in the Houston area other than the complainant's family, with whom appellant has had no contact for thirteen years.

Considering the evidence relevant to the factors set out in article 17.151 and in *Ex parte Rubac*, we hold the trial court did not abuse its discretion in setting bail in the amount of $250,000. *See Ex parte Robles*, 612 S.W.3d 142, 148 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (recognizing accused's ability to make bail is but one factor to be considered).

We overrule issue three.

## II.    CONCLUSION

Having overruled all of appellant's issues, the order of the trial court is affirmed.


/s/     Charles A. Spain
Justice

Panel consists of Justices Spain, Poissant and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).