# Court of Appeals
## Tenth Appellate District of Texas

---

10-25-00217-CR

---

Ex parte Joseph Blair Brooks,

---

On appeal from the
443rd District Court of Ellis County, Texas
Judge Faith Johnson, presiding
Trial Court Cause No. 52384CR

---

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

Appellant Joseph Blair Brooks appeals the trial court's denial of his motion for release due to delay pursuant to article 17.151 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 17.151. Brooks contends article 17.151 mandates his release by requiring the trial court to either grant him a personal recognizance (PR) bond or reduce his bond to an amount he could afford based on the record. The trial court's refusal of Brooks' request, according to Brooks, constitutes an abuse of its discretion. We reverse the trial court's denial of the motion for release and remand for further proceedings.

## BACKGROUND

Brooks was arrested on May 10, 2024, on suspicion of solicitation of capital murder. A grand jury returned an indictment against Brooks on a charge for solicitation of capital murder with remuneration on October 16, 2024. TEX. PENAL CODE § 19.03(a)(3). Brooks has been continuously in jail since the date of his arrest.

The trial court originally set bail at $700,000. Brooks filed his first article 17.151 motion for release on August 14, 2024, and, on September 10, 2024, the trial court reduced Brooks' bail to $200,000. Brooks subsequently filed two additional motions for release, one in March of 2025 and one in May of 2025. Following a hearing on June 11, 2025, the trial court denied Brooks' request to reduce his bail, stating that Brooks could have posted bond at $200,000 at the time it was set "if he so chose." On July 3 of that year, Brooks filed an application for writ of habeas corpus requesting a reduction in bail, which the trial court also denied. Brooks appeals the trial court's denial of his July 3 writ application.

## STANDARD OF REVIEW

We review a trial court's decision in a habeas proceeding regarding the imposition or reduction of bail for an abuse of discretion. *Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013). A trial court abuses its discretion

when it acts without reference to guiding principles or rules, or where its act was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc).

## ANALYSIS

In one issue, Brooks contends that article 17.151 of the Texas Code of Criminal Procedure is a mandatory provision requiring the trial court either to release Brooks on a personal bond or to reduce his bail to an amount he can afford. *See* TEX. CODE CRIM. PROC. art. 17.151. The trial court's failure to take either of these actions, Brooks argues, constitutes an abuse of its discretion. The parties do not dispute that article 17.151 applies to Brooks' writ of habeas corpus. The only issue is whether the trial court was required to provide for Brooks' release by granting him a personal bond or reducing his bail.

Article 17.151 is a mandatory provision: where the State is not ready for trial within 90 days from the commencement of the defendant's detention, the defendant must be released either on a personal bond or by reducing the bail amount. *Ex parte Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021). Where the trial court chooses to reduce the amount of bail, it must reduce bail required to an amount that the record reflects a defendant can make in order to effectuate release. *Id.*; *Rowe v. State*, 853 S.W.2d 581, 582 n. 1 (Tex. Crim. App. 1993). The defendant does not have a burden to establish the amount of

bail he can afford, and the trial court is not authorized when setting a reduced bail amount to consider factors other than the amount of bail the record reflects the defendant can afford to pay. *Ex parte Lanclos*, 624 S.W.3d 923, 927-28 (Tex. Crim. App. 2021).

The record in this case contains conflicting evidence regarding Brooks' ability to afford bail at $200,000. At his June 11, 2025 hearing, Brooks testified that he was incapable of posting the $200,000 bail, although he would only be required to pay 10% of the bail—$20,000—and collateral to effectuate his release. However, the record establishes that Brooks' bail had been previously reduced from $700,000 to $200,000. No attempt to challenge that amount was made until another motion to reduce bail was filed six months later. Brooks also testified at the hearing that, after the trial court previously reduced bail to $200,000, Brooks had received $19,000 from the sale of real property and continued to receive $4,400 per month in benefits from the Veterans Administration since his arrest. Brooks stated that the proceeds from the property sale were used to reimburse his parents for his legal fees, while the VA funds were used to support his children, although Brooks was not under a court order to pay child support. Brooks also testified as to having "maybe $1,000" in a bank account.

The State contends that Brooks' testimony at the June 11 hearing

establishes that he could afford to pay the $200,000 bond at the time his bail was set at that amount; he simply chose not to spend his funds to post a bail bond. Brooks' voluntary failure to pay, the State argues, does not require the trial court to further reduce his bond to account for Brooks' expenditure of funds he could have used to post a bail bond. Further, the State contends that the trial court was within its discretion in denying Brooks' release on personal bond (PR) or a bond reduction because the trial court was entitled to not believe Brooks' testimony pertaining to the amount of bail he can afford.[1]

This case presents a novel issue in our jurisdiction: whether the language "must be released" in article 17.151 mandates that a trial court further reduce bail for a criminal defendant where the defendant, after receiving an initial reduction in bail under article 17.151, chooses to make non-obligatory payments to family members instead of posting a bail bond and subsequently moves for a PR bond or a further reduction in bail. We hold that the mandatory language of article 17.151 requires a trial court to provide for a defendant's release where its prerequisites are met, even if the trial court has previously reduced the defendant's bail under the statute.

When interpreting a statute, we seek to give effect to the intent or purpose of the legislators who enacted the statute. *Boykin v. State*, 818 S.W.2d

---

[1] Because this issue turns on statutory construction, we need not address the State's credibility argument here.

782, 785 (Tex. Crim. App. 1991).  This requires us to analyze the plain language of the statute.  *Id.*  Only where the statute is ambiguous or application of the statute's plain language would lead to an absurd result that the legislature did not intend can we consult extratextual sources.  *Ex parte Gill*, 413 S.W.3d 425, 429 (Tex. Crim. App. 2013).

Article 17.151 is designed to preserve the presumption of innocence for a criminal defendant facing prosecutorial delay by protecting the defendant from "the incidental punitive effect" of pretrial confinement.  *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991) (quoting *Ex parte Green*, 688 S.W.2d 555, 557 (Tex. Crim. App. 1985)).  This incidental punitive effect of pretrial detention raises concerns over infringement of the defendant's due process rights.  *See Green*, 688 S.W.2d at 556-57; *see also Schall v. Martin*, 467 U.S. 253, 269 (1984) ("It is axiomatic that 'due process requires that a pretrial detainee not be punished'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).  The Legislature secured protection from the punitive effects of extended pretrial detention by creating a right for criminal defendants to guarantee their release from custody should the State delay in bringing prosecution for the period of time prescribed by the statute.  *State v. Condron*, 951 S.W.2d 178, 188 (Tex. App.—Dallas 1997, pet. dism'd).

Article 17.151 does not provide discretion to the trial court to determine

whether the defendant should be released. Rather, the statute's command is unequivocal: the defendant must be released. *Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013) ("The first sentence of article 17.151 *unequivocally* declares that a defendant detained pending trial 'must be released' if the State is not ready for trial") (emphasis added). The trial court does have some discretion in determining the mechanism through which the defendant should be released— by issuing a PR bond or by reducing bail to an amount the defendant can actually afford to pay. *Ex parte Lanclos*, 624 S.W.3d 923, 928 (Tex. Crim. App. 2021). However, when deciding how to release the defendant, the trial court must ensure the defendant's release. *See Ex parte McNeil*, 772 S.W.2d 488, 490 (Tex. App.—Houston [1st Dist.] 1989, no pet.) ("To hold otherwise would allow the State to arrest McNeil, charge her with a crime, and then simply leave her in jail without bothering to indict her"). The trial court does not have discretion to deny the defendant's release when the prerequisites of article 17.151 have been met, *i.e.*, where the defendant has been detained for more than 90 days and the State is not ready for trial. *Ex parte Lanclos*, 624 S.W.3d 923, 928 (Tex. Crim. App. 2021).

The State concedes that Brooks was held for more than 90 days prior to his indictment.[2] *See Ex parte Avila*, 201 S.W.3d 824, 826 (Tex. App.—Waco

---

[2] Further, the State does not contend that any of the exceptions enumerated in § 2 of article 17.151 apply to Brooks.

2006, no pet.) ("When there is no indictment, the State cannot announce ready for trial"). The trial court was required to provide for Brooks' release either by issuing a PR bond or by reducing bail to an amount the record established Brooks could afford. In denying either remedy, the trial court abused its discretion in failing to adhere to the guiding principles of article 17.151. *See Pharris v. State*, 196 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Section 17.151 is mandatory").

It is immaterial that Brooks previously had his bail reduced or that he failed to post a bail bond following the initial bond reduction. The Legislature spoke in clear, unambiguous terms in mandating a defendant's release under article 17.151. *Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013). Although the State presents a compelling argument about the potential for abuse of article 17.151, our goal is not to determine what constitutes sound policy, but rather to give effect to the Legislature's intent. *Tijerina v. City of Tyler*, 846 S.W.2d 825, 828 (Tex. 1992) ("But as judges, we are called upon to apply a statutory command even when it produces a policy of which we disapprove… we cannot rewrite or… deconstruct a plainly worded statute because we believe it does not effectuate sound policy"). We will not create an ambiguity where one does not exist in the plain language of the statute. *See Tex. Dept. of Public Safety v. Kreipe*, 29 S.W.3d 334, 337 (Tex. App.—Houston

[14th Dist.] 2000, pet. denied) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)). Nor do we believe the plain meaning of the statute creates an absurd result; rather, the Legislature's intent to require a defendant's release—even where the defendant, like Brooks, acts inconsistent with his right for release—is clear. *See, e.g., Ex parte Lanclos*, 624 S.W.3d 923, 928 (Tex. Crim. App. 2021) (stating that article 17.151 "mandates [a defendant's] release—either on personal bond or by reducing the required bail amount—*period*") (emphasis added); *Jones v. State*, 803 S.W.2d 712, 715 (Tex. Crim. App. 1991) (stating the "obvious legislative intent" of article 17.151 is "to provide assurance that an accused will not be held in custody indefinitely while the State is not at least prepared to bring him to trial"). Holding otherwise would obstruct Brooks' presumption of innocence and subject him to the incidental punitive effects of pretrial confinement. *See Jones*, 803 S.W.2d at 716.

## CONCLUSION

Article 17.151 mandates Brooks' release. Brooks has been in custody awaiting trial on suspicion of a felony charge for more than 90 days, and the State was not ready for trial at the time Brooks filed his application for writ of habeas corpus. In denying Brooks' release, the trial court abused its discretion by failing to adhere to article 17.151's mandate. Brooks' failure to effectuate

his own release after his initial bail reduction does not excuse the trial court's action.

Brooks' sole issue is sustained, and the trial court's "Order," signed on July 10, 2025, is reversed. The case is remanded to the trial court for further proceedings on Brooks' application for writ of habeas corpus by either releasing Brooks through issuance of a PR bond or by reducing the amount of bail to that which Brooks can presently afford.

LEE HARRIS
Justice

OPINION DELIVERED and FILED: April 9, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Reversed and remanded
Do Not Publish
OT06

